THIRD DIVISION 

September 22, 1999

No. 1-94-3118

MICHAEL DUBINA 
et
 
al
.,

Plaintiffs,

v.

MESIROW REALTY DEVELOPMENT, INC.; MESIROW REALTY MANAGEMENT, INC.; AMERICAN NATIONAL BANK & TRUST CO. OF CHICAGO; SUPERIOR STREET REDEVELOPMENT LIMITED PARTNERSHIP; CCL OF CHICAGO, INC.; CREATIVE CONSTRUCTION, LTD.; K&S AUTOMATIC SPRINKLERS, INC.; and ECONOMY MECHANICAL INDUSTRIES, INC.;

Defendants and Counterdefendants 

and Plaintiffs' Assignees- 

Appellees

(Superior Atrium Partnership; Mesirow Real Estate Investment, Inc.; Mesirow Property Funding Group III; 341 Redevelopment Limited Partnership; Fireman's Fund Insurance Companies; International Insurance Company; and Westchester Insurance Company;

Plaintiffs' Assignees-Appellees;

Litgen Concrete Cutting and Coring Company,

Defendant and Counterplaintiff-

Appellant).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

))

)

)

Appeal from the

Circuit Court of

Cook County

Nos. 89 CH 3332

89 CH 3052

89 L 8533

89 L 10777

89 L 15502

90 L 5708

90 L 6972

90 L 8057

90 L 8240

90 L 10158

90 L 13419

90 L 14816

90 L 15151

90 L 18077

90 L 18115

90 M1 20813

90 M1 26470

91 CH 3310

91 L 5812

91 L 5826

91 L 5827

91 L 5904

91 L 6757

91 L 14064

91 L 18230

91 L 20014

93 L 4007

93 L 4398

93 L 4426

93 L 4549

93 M1 14471

93 M1 14571

Honorable

Robert V. Boharic,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We are asked to decide whether the settlement of a property damage law suit can pass the good-faith test under the Contribution Act (the Act) (740 ILCS 100/2(c)(West 1996)) when the plaintiff, as a condition of the settlement agreement, assigns his cause of action to the defendant.  We conclude that this kind of settlement undermines the policy of the Act and reverse.

In an earlier review of this case, we dismissed the appeal of defendant Litgen Concrete Cutting and Coring Company (Litgen) for lack of jurisdiction.  See 
Dubina v. Mesirow Realty Development, Inc.
, 283 Ill. App. 3d 36, 669 N.E.2d 694 (1996).  Our supreme court reversed, holding that the filing of a new action after a voluntary dismissal did not deprive the appellate court of jurisdiction to review good-faith findings of settlement agreements arising out of the earlier action.  The supreme court then remanded this case to this court for consideration of the merits.  
Dubina v. Mesirow Realty Development, Inc.
, 178 Ill. 2d 496, 687 N.E.2d 871 (1997).  We now do so.

Over 30 plaintiffs sued defendants for property damage caused by a fire on April 15, 1989, in a building that housed several art galleries.  Plaintiffs are, variously, the owners of the art galleries who leased space in the building, artists who exhibited work in the galleries, and their insurers.  Defendants are owners and managers of the building, general contractors hired for renovation, and their subcontractors.

Plaintiffs over time settled with all defendants except Litgen and Gelick Foran Associates, Inc. (Gelick).  The settlement agreements included assignments to certain settling defendants and their insurers of plaintiffs' causes of action against defendant Litgen.  

The record shows that the settling defendants, as well as their insurers and several nonparties, created a settlement fund of $16 million.  As part of the fund agreement, the settling defendants waived all causes of action against each other except for those that were not settled.  The settlement fund agreement reads in part:

"All Defendants and Insurers retain the power to veto any proposed settlement offer to any individual claimant.  All settlement offers under this Agreement must be made with the unanimous agreement of all Defendants and Insurers.  ***  A good faith finding by the court is required on each settling claim.

***

Settlement with any claimant 
will require that claimant [to] *** assign any rights the claimant may have against Litgen Concrete Cutting & Coring Co. and Gelick Foran to the parties hereto
, other than Economy and National Union.  Economy Mechanical Industries, Inc. and National Union Fire Insurance Company of Pittsburgh, PA expressly waive any rights they may have to any such assignments."  (Emphasis added.)

The fund agreement also directed the following distribution of any recovery from Litgen:  20% to Westchester Insurance Company, and 80% to Mesirow, CCL-Creative and Fireman's Fund Insurance Companies.

The settling defendants subsequently entered into 29 separate settlement agreements with plaintiffs.  Each agreement included an amount to be paid in settlement and an equal amount to be paid in exchange for an assignment of each plaintiff's cause of action against Litgen and Gelick.  As a result, the settling defendants paid almost $9 million to plaintiffs, half of which was designated as payment for the assignments.  The list of assignees varied from agreement to agreement.  The defendants named as assignees under the agreements were American National Bank and Trust, Superior Street Redevelopment Limited Partnership, Mesirow Realty Development, Mesirow Realty Management, CCL of Chicago, and Creative Construction, Ltd.  Several insurance companies and other nonparties--who Litgen alleges are "related to the Mesirow group of defendants"--were also named as assignees in some agreements.  Plaintiffs agreed to continue their suits against Litgen until the assignees executed a substitution of attorneys.  Plaintiffs also agreed to cooperate with the assignees in their suit against Litgen, and the assignees agreed to reimburse plaintiffs for the cost of plaintiffs' cooperation.

Over the course of three separate hearings, the trial court found that each settlement agreement had been made in good faith as required under the Act (740 ILCS 100/2(c)(West 1996)).  The court then dismissed plaintiffs' claims against the settling defendants, as well as the settling defendants' claims against Litgen. The court also dismissed all the defendants' actions for contribution, including Litgen's actions against the settling defendants.  Only plaintiffs' suits against Litgen and Gelick remained.  The settling defendants substituted their attorneys for plaintiffs' attorneys and moved for voluntary dismissal of the suits against Litgen and Gelick.  On July 28, 1994, the trial court granted plaintiffs' motion for a voluntary dismissal.  This appeal followed.

Defendant Litgen maintains that the trial court erred in finding that the settlement agreements were made in good faith.  Litgen's argument is threefold: (1) that the agreements violate the Contribution Act by allowing settling defendants to seek indirectly a remedy they could not seek directly--contribution; (2) that the designation of some settlement money for the assignments deprives Litgen of a setoff of those amounts; and (3) that the agreements contravene the policy of the Act: to encourage settlement and the equitable sharing of damages.  

The Contribution Act codifies and expands upon our supreme court's holding in 
Skinner v. Reed-Prentice Division Package Machinery Co.
, 70 Ill. 2d 1, 374 N.E.2d 437 (1977).  
Skinner
 created a right of contribution for joint tortfeasors who satisfy a claim
 in excess of their 
pro
 
rata
 share of liability.  
Skinner
, 70 Ill. 2d at 12-14.  The subsequently enacted Contribution Act provides:

"(c)  When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d)  The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e)  A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement."  740 ILCS 100/2 (c), (d), (e) (West 1996).

A joint tortfeasor's right to settle is limited only by the requirement that the settlement be made "in good faith."  740 ILCS 100/2(c) (West 1992).  Whether a settlement has been made in good faith is a matter within the discretion of the trial court, and we will not reverse that finding absent an abuse of discretion.  
In re Guardianship of Babb
, 162 Ill. 2d 153, 162, 642 N.E.2d 1195 (1994).  To decide whether a settlement has been made in good faith, the trial court must consider all the circumstances surrounding the settlement, keeping in mind "the strong public policy favoring the peaceful settlement of claims *** [while allowing] trial courts to be on guard for any type of evidence of collusion, unfair dealing or wrongful conduct by the settling parties."   
Babb
, 162 Ill. 2d at 162, citing 
Ballweg v. City of Springfield
, 114 Ill. 2d 107, 122-23, 499 N.E.2d 1373 (1986), and 
Blagg v. Illinois F.W.D. Truck & Equipment Co.
, 143 Ill. 2d 188, 572 N.E.2d 920 (1991).  "An agreement that conflicts with the terms of and/or the policies underlying the Contribution Act does not satisfy the good-faith requirement and cannot discharge the settling tortfeasor from contribution liability."  
Babb
, 162 Ill. 2d at 170.

Here, the settling defendants point out, as did the trial court, that causes of action for damage to property are generally assignable in Illinois.  
North Chicago Street R.R. Co. v. Ackley
, 171 Ill. 100, 49 N.E. 222 (1897).  But we must decide a narrower issue: whether an assignment to defendants who have received the benefits of the Contribution Act undermines the policy of the Act.  
Ackley
, which predates the Contribution Act by 93 years, provides no guidance on this issue.  

Litgen draws our attention to our supreme court's analysis of the Contribution Act's good-faith requirement in 
Babb
, 162 Ill. 2d 153, 642 N.E.2d 1195.
  Litgen maintains that the reasoning and result in 
Babb
 compel a rejection of the settlement agreements in this case.  We agree.

At issue in 
Babb
 was the propriety of a "loan receipt" settlement agreement.  Under a "loan receipt" agreement, a plaintiff receives an "interest free loan" (the settlement money) from the settling tortfeasor, who is then dismissed from the action.  The plaintiff, however, must repay the "loan" out of proceeds from judgments against or settlements with other tortfeasors.   
Babb
, 162 Ill. 2d at 168.  

Loan receipt agreements evolved as a response to the often harsh results under the "no contribution" rule at common law.  Before 
Skinner
, a tortfeasor who was sued and settled, or paid a judgment, had no right to contribution from others who may have been at fault.  
Babb
, 162 Ill. 2d at 168.  The loan receipt agreement in 
Babb
 contained a $50,000 settlement payment and a $350,000 loan.  Although the settling defendant paid $400,000 to settle, the nonsettling tortfeasors would only be entitled to a $50,000 setoff.  
Babb
, 162 Ill. 2d at 173.  The agreement also required the plaintiff to obtain the settling defendants' consent before settling with other tortfeasors. 

The 
Babb
 court acknowledged that an earlier supreme court decision approved a loan receipt agreement: 
Reese v. Chicago, Burlington & Quincy R.R. Co.
, 55 Ill. 2d 356, 303 N.E.2d 382 (1973).  But 
Skinner
, 70 Ill. 2d 1, 374 N.E.2d 437, and the Contribution Act, changed Illinois law.  Now, the loan receipt device is no longer necessary to guard against an unjust result.  In 
Babb
, the court noted that when 
Skinner
 created the right to contribution, the Skinner court "criticized both the common law rule barring contribution 
and
 the various devices created to mitigate the harsh consequences of that rule (
i.e.
, loan-receipt agreements)."  (Emphasis in original.)  
Babb
, 162 Ill. 2d at 169.  Against this background, 
Babb
 examined: first, whether loan receipt agreements are consistent with the language of the Act; and second, whether the agreement is consistent with the underlying policies of the Act
--the equitable sharing of damages and the encouragement of settlement.  
Babb
, 162 Ill. 2d at 170.  
Babb
 held that loan receipt agreements violate the Contribution Act in two ways: (1) they allow a settling tortfeasor to indirectly seek contribution where contribution is directly prohibited; and (2) they manipulate settlement funds to deprive nonsettling tortfeasors of their right to a fair setoff under the Act.

Babb
 also held that loan receipt agreements disrupt the policy goals of the Contribution Act.  The court noted that since the settling defendant is paid back, the loan receipt agreement simply shifts the settling defendant's liability to the nonsettling tortfeasors.  The nonsettling tortfeasors are confronted with the possibility that they will pay more than their 
pro
 
rata
 share of liability, yet cannot seek contribution from the settling defendant.  As a result, the loan receipt agreement allows the settling tortfeasor a chance to avoid paying an equitable share of damages.  Further, the loan receipt agreement does not encourage settlement because the settling defendant retains the right to block settlement with others.  The court acknowledged that loan receipt agreements might encourage early settlement with "a single tortfeasor," but the court was unpersuaded that loan receipt agreements encourage settlement of the entire litigation.   
Babb
, 162 Ill. 2d at 178.   The court reasoned that the more "blameworthy" tortfeasor is most likely to enter into a loan receipt agreement to limit liability at trial.  Settlement with the remaining tortfeasors would be less likely since higher settlement figures must be demanded by plaintiffs to repay the loan.  
Babb
, 162 Ill. 2d at 178-79.

The settling defendants, appellees here, do not quarrel with the reasoning or the result in 
Babb
, but argue that the assignments as components of the settlement agreements in this case may still survive.  Each, however, offers a different rationale.

Defendant K&S Automatic Sprinklers, Inc., argues that the settlement agreements in this case are, in effect, loan receipt agreements but predate the holding in 
Babb
 and were valid when made.  The other settling defendants argue that they are not loan receipt agreements.

K&S admits that 
Babb
 "adopted most, if not all of the points asserted by Litgen in the case at  bar."  But if the settlement agreements here are nothing more than loan receipt agreements in disguise, K&S suggests they are grandfathered under the holding in 
Babb
.  Before 
Babb
, our supreme court approved of such agreements.  See 
Reese
, 55 Ill. 2d 356, 303 N.E.2d 382.  Recognizing that some litigants may have relied on 
Reese
, our supreme court in 
Babb
 directed prospective application of its ruling.  
Babb
, 162 Ill. 2d at 179.  The settlement agreements here were signed before 
Babb
 was decided.

We disagree with the K&S analysis.  The assignments here do not fit the definition of loan receipt agreements used by our supreme court in 
Babb
 (
Babb
, 162 Ill. 2d at 168).  Defendant Litgen points out the most obvious difference: there was no loan with a requirement of repayment upon recovery.  The money paid to plaintiffs here was contingent on nothing other than the trial court's finding of good faith.  Under loan receipt agreements, a plaintiff remains a party to the case.  Under the assignments here, plaintiffs dropped out of the litigation and surrendered their right to recover from Litgen (except for one plaintiff who reserved a 10% share of all recovery on its claim).  The assignees stepped into the shoes of plaintiffs.  The assignee defendants may not only recoup money paid to settle claims against them but, with the purchased claims against defendant Litgen in hand, may realize a profit.

We do not read the 
Reese
 toleration of loan receipt agreements as  broad enough to permit the outright assignments in this case.  How the 
Reese
 court, writing before the Contribution Act, would have viewed the assignments in this case is nothing more than speculation.   

The other settling defendants take a different approach.  They stress the differences between the assignments here and the loan receipt agreement in 
Babb
.  They urge us to view assignee defendants as "plaintiffs" rather than "tortfeasors" or "settling defendants."  They argue that, "[w]hen the [s]ettling [d]efendants' liability was extinguished, and they obtained an assignment of the [p]laintiffs' claims, they stepped into the [p]laintiffs' shoes for purposes of the lawsuit."  They point out that the Contribution Act allows a "plaintiff" to pursue a cause of action against nonsettling tortfeasors.  See 740 ILCS 100/2(d) (West 1996).  They suggest that the equitable sharing of damages is not upset because a recovery from Litgen will be paid to them in their new role as "plaintiffs," not as joint tortfeasors.  And they further urge us to consider the assignments as a separate agreement apart from the settlement agreements.  They emphasize, as did the trial judge, that causes of action for damage to property are generally assignable.  See 
Ackley
, 171 Ill. 100, 49 N.E.2d 222.  They conclude that they, like anyone else, should be free to buy assignments.

The argument is not without a certain 
laissez
-
faire
 appeal.  But the Contribution Act, embodying the will of the legislature and the public policy of Illinois, is not a 
laissez
-
faire
 statute.  The Act departs from the common law and awards settling defendants an incentive to resolve the issue of their liability without litigation by shielding them from further exposure.  Having taken advantage of the shield afforded by the Act, defendants now wish to buy the sword of the original plaintiff.

The assignments in this case were included in the documents that set out the terms of settlement.  The fund agreement among the settling defendants prohibited them from settling with plaintiffs without first obtaining assignments of the claimants' cause of action.  Since the assignments are a condition precedent to the settlement agreements, they must be viewed as a part of the totality of circumstances considered in a good-faith finding.  The argument that assignee defendants would only receive a recovery as "plaintiffs" ignores the thrust of Litgen's argument: allowing settling defendants to shed their role as tortfeasor for that of unfettered plaintiff allows them to seek a recovery that the Contribution Act prohibits to one who has accepted the benefits of the Act.

We agree with the settling defendants that the agreements here encouraged more settlements than they discouraged.  But the Contribution Act also encourages settlements that apportion damages 
equitably
, according to the tortfeasor's relative fault.  See 
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 283, 641 N.E.2d 402 (1994).  Our supreme court has never held that the goal of encouraging settlements outweighs the goal of equitable apportionment of damages.  These assignments clearly undermine equitable apportionment.

We have found no case upholding an assignment of a cause of action from a settling plaintiff to a joint tortfeasor in a jurisdiction that has similar laws governing contribution.  Litgen directs our attention to two cases that have found similar assignments to be against public policy.  See 
DeJong v. B.F. Goodrich, Inc.
, 96 Mich. App. 36, 292 N.W.2d 157 (1980); 
Alder v. Garcia
, 324 F.2d 483 (10th Cir. 1963).  In 
DeJong
, the plaintiff sued a tire manufacturer, tire seller, and the owner of another vehicle involved in an accident that killed her husband.  Plaintiff later released the owner of the other vehicle and assigned her remaining claims to the owner's insurer.  In reviewing the assignment, the 
Dejong
 court relied on an early Michigan Supreme Court case, holding that the assignment of a plaintiff's cause of action to a joint tortfeasor was against public policy.  See 
Upham v. Dickinson
, 38 Mich. 338 (1878).  The court held that there was no meaningful distinction between an assignment to a joint tortfeasor and an assignment to the joint tortfeasor's insurer: both assignments represented "an attempt by the assignee to improve its position from that of a potentially liable defendant insurer to that of a potentially profit-making plaintiff."  
DeJong
, 96 Mich. App. at 41, 292 N.W.2d at 160.  The assignment represented an attempt to seek contribution, indemnity or profit in circumstances where the statutory prerequisites for contribution had not been met.  The court affirmed the dismissal of the assignee's complaint.  
DeJong
, 96 Mich. App. at 42, 292 N.W.2d at 160.

In 
Alder
, the settling defendant, an insurer, took an assignment of one-half of any recovery from the nonsettling codefendant.   The court held that the assignment violated the public policy of New Mexico's statutes governing release of joint tortfeasors.  Like the Illinois Contribution Act, New Mexico's contribution statute did not allow a settling joint tortfeasor to recover contribution from another joint tortfeasor whose liability had not been extinguished.  The court concluded that the agreement would allow a joint tortfeasor to "benefit[] in a manner contrary to the public policy of the state as expressed in the [Contribution Act]."  
Alder
, 324 F.2d at 485.  

We believe 
DeJong
 and 
Alder
 are soundly reasoned.  Like the agreements in 
DeJong
 and 
Alder
, the settlement agreements here allow settling defendants to recoup their share of damages, perhaps make a profit, and yet be shielded from contribution under the Contribution Act.  The result is antithetical to the Contribution Act, whether it is achieved by "assignment" or "contribution," and whether the settling defendants are labeled "plaintiffs" or "joint tortfeasors."  The assignments allow the settling defendants to seek indirectly a reimbursement the Contribution Act prohibits and undermine the equitable sharing of damages.

Finally, the settling defendants suggest that Litgen is not prejudiced by the assignments because Litgen's liability and setoff will be the same whether plaintiffs or settling defendants are the ones collecting.  The settling defendants cite the appellate court decision in 
Claudy v. Commonwealth Edison Co.
, 255 Ill. App. 3d 714, 626 N.E.2d 1088 (1993), 
rev'd on other grounds
, 169 Ill. 2d 39, 660 N.E.2d 895 (1995).  There we upheld an assignment of a contribution cause of action from a joint tortfeasor to the plaintiff.  We reasoned that the nonsettling defendant would only be liable for damages that the settling defendant paid in excess of its 
pro
 
rata
 share.  So the nonsettling defendant would find himself in the same position he would be in if the settling defendant did not assign the contribution right.  But we noted that "the assignment at issue *** promoted a settlement without inhibiting an equitable sharing of damages."  
Claudy
, 255 Ill. App. 3d at 725.  We also stressed that the settlement extinguished all the defendants' tort liability, leaving only the contribution claim to be litigated.  We recently revisited the issue and reached the same conclusion in 
Block v. Pepper Construction Co.
, 304 Ill. App. 3d 809, 710 N.E.2d 85 (1999).  
Claudy
 and 
Block
 noted the lack of prejudice to the defendant, but recognized, as 
Babb
 recognized, that the promotion of settlement without disrupting the equitable sharing of damages among defendants was at the heart of the issue.

Defendant Economy Mechanical Industries, Inc., in a separate brief, points out that, among the defendants, it holds a unique position under the terms of the settlement agreements: Economy waived the right to an assignment.  Economy argues that if the assignments are the only reason the settlement agreements are not in good faith, then the finding that its settlement was in good faith must be affirmed.  But Economy was a party to the settlement agreements and to the fund agreement that prohibited settlement without tender of the assignments.  Most importantly, Economy's insurer also contributed $4 million to the fund that was used, in part, to buy the assignments.  Whatever agreement there may have been among the defendants about allocation of their individual contributions to settlement and purchase agreements, it does not appear of record.  The defendants settled as a group and unanimous consent was required.  Economy may have waived its right to assignment, but the monetary participation was necessary to make the settlement possible.  Under these circumstances, on this record, we cannot find that Economy is entitled to a good-faith finding.

Defendant Litgen also challenges the trial court's initial denial of its motion to dismiss defendant Mesirow's contribution claims and the trial court's refusal to bifurcate the trial.  As Litgen acknowledges, these issues need not be addressed in light of our holding.  We note in passing that the refusal to bifurcate a trial is not a final and appealable order.

We reverse the trial court's finding that the settlement agreements were made in good faith and its subsequent dismissal of Litgen's contribution claims.  We remand for further proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN and McBRIDE, JJ., concur.