BHI CORPORATION *et al.*, Plaintiffs-Appellants, v. LITGEN CONCRETE CUTTING AND CORING COMPANY, Defendant-Appellee.

First District (2nd Division) No. 1—02—2296

Opinion filed February 10, 2004.

Stephen T. Mikus and Terrence J. Madden, both of Bryce, Downey, Murray, Jensen & Mikus, L.L.C., and Edward B. Ruff III, Robert Marc Chemers, and Scott A. Howie, all of Pretzel & Stouffer, Chtrd., both of Chicago, for appellants.

Michel T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., and William E. Spizzirri, of Kralovec & Marquard, Chtrd., both of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

We address an issue raised by the same litigants who were before our supreme court in *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 756 N.E.2d 836 (2001). In that case, the supreme court held that the settlement agreements reached by the parties violated the good-faith requirement of the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/0.01 *et seq.* (West 1994)).

The case before us has a long procedural history. Earlier opinions were: *Dubina v. Mesirow Realty Development, Inc.*, 283 Ill. App. 3d 36, 669 N.E.2d 694 (1996), *rev'd*, 178 Ill. 2d 496, 687 N.E.2d 871 (1997); and *Dubina v. Mesirow Realty Development, Inc.*, 308 Ill. App. 3d 348, 719 N.E.2d 1084 (1999). The litigation arose from a fire in 1989 that destroyed a building that housed several art galleries in Chicago's River North district. The original plaintiffs were artists and gallery owners, including BHI Corporation and Michael Dubina, who suffered

losses in the fire. The original defendants were companies, including Mesirow Realty Development, Inc., and Litgen Concrete Cutting and Coring Co. (Litgen), that were renovating the building at the time of the fire. The 35 separate actions were consolidated for discovery and trial. The plaintiffs settled with all of the defendants, with the relevant exception of Litgen, before the trial. The settling defendants entered into 29 separate agreements with the plaintiffs, each requiring the plaintiffs to assign their claims against Litgen to the settling defendants.

Under the terms of the agreements, the settling defendants paid plaintiffs $9 million—$4.5 million for the release of plaintiffs' claims against the defendants other than Litgen, and $4.5 million for the assignment to defendants of plaintiffs' claims against Litgen.

In July 1994, the trial court found all 29 of the settlement agreements to be in good faith under section 2(c) of the Act. 740 ILCS 100/ 2(c) (West 1994). As a result of its good-faith finding, the trial court dismissed the contribution claims between Litgen and the settling defendants. See 740 ILCS 100/2(d) (West 1994) (a tortfeasor who enters into a good-faith settlement is discharged from all liability for any contribution to another tortfeasor); 740 ILCS 100/2(e) (West 1994) (a tortfeasor who enters into a good-faith settlement is not entitled to recover contribution from a tortfeasor whose liability was not extinguished by the settlement). The trial court also granted the plaintiffs' motion to voluntarily dismiss their direct claims against Litgen. After the voluntary dismissal, Litgen appealed, contending that the trial court erred in finding that the settlements had been made in good faith and in dismissing Litgen's contribution claims against the settling defendants.

While Litgen's appeal was pending, the original defendants, as assignees of the original plaintiffs' claims, filed a single complaint against Litgen (95 L 2491) on February 16, 1995, in the circuit court. Based on this filing, the settling defendants filed a motion in the appellate court, arguing that Litgen's pending appeal of the circuit court's good-faith finding must be dismissed because the refiling (95 L 2491) transformed the final orders into nonfinal orders and divested the appellate court of jurisdiction. The appellate court agreed (*Dubina*, 283 Ill. App. 3d at 40). But the supreme court reversed and remanded the cause, concluding that the orders from which Litgen appealed were final and appealable (*Dubina*, 178 Ill. 2d at 506).

On remand, the appellate court considered Litgen's appeal on its merits and concluded that the trial court erred in finding the settlement agreements were in good faith. The appellate court reversed the dismissal of Litgen's contribution claims against the settling

defendants and remanded the cause to the trial court for further proceedings. The supreme court granted leave to appeal and on July 26, 2001, affirmed the decision of the appellate court: "[W]e find that the settlement agreements at issue in this case violate both the terms of, and the policies underlying, the Act. Because the settlement agreements violate both the terms of and the policies underlying the Act, the settlement agreements do not satisfy the good-faith requirement of the Act." *Dubina*, 197 Ill. 2d at 196.

Following remand to the trial court, the settling defendants, acting now as assignees of the original plaintiffs' claims under the settlement agreements, refiled their complaint against Litgen under a new case number (01 L 14327) in December 2001. Litgen filed a motion to dismiss the renumbered action in February 2002, arguing that the plaintiffs could not pursue this action because their claims were predicated on settlement agreements deemed "not in good faith" and unenforceable by the supreme court. The trial court on May 13, 2002, granted Litgen's motion and dismissed the case numbered 01 L 14327 with prejudice. The plaintiffs' motion to reconsider was denied. On July 30, 2002, plaintiffs filed the present appeal.

The question before us is: when the settling defendants' assignments of a cause of action are found to be not in good faith under the Act, may the settling defendants recast the complaint, abandon the protection of the Act and sue the nonsettling defendant as an assignee of the settling plaintiffs' cause of action? We answer in the negative and affirm the trial court's dismissal of plaintiffs' complaint against Litgen.

■ Under the Act, settling defendants in a negligence action cannot recover contribution from a joint tortfeasor, such as Litgen, whose liability was not extinguished by a "good-faith" settlement agreement. 740 ILCS 100/2 (West 1994). Section 2(c) of the Act provides:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury *** it does not discharge any of the other tortfeasors from liability for the injury *** unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 1994).

On appeal, plaintiffs' main arguments against dismissal of the complaint are: (1) this action predated and is separate from the "good-faith" question answered by the supreme court in its 2001 *Dubina* opinion; (2) the supreme court could not have intended that its "not in good faith" finding would conclude litigation because the cause was

remanded for further proceedings; and (3) the denial of the settling defendants' rights to prosecute their claims against Litgen as assignees is fundamentally unfair because it relieves Litgen of liability. Instead, the settling defendants contend they should be allowed to pursue the assigned claims against Litgen even if they are subject to restrictions preserving Litgen's right to a setoff and allocating to Litgen its proper *pro rata* share of liability.

■ We first realign the parties under section 2—407 of the Code of Civil Procedure (Code) (735 ILCS 5/2—407 (West 2000) (new parties may be added and parties misjoined in an action may be dropped by order of the court at any stage as the ends of justice require)). See *Lerner v. Zipperman*, 69 Ill. App. 3d 620, 625, 387 N.E.2d 946 (1979) (it is the duty of the appellate court to require joinder of necessary parties *sua sponte*, even if no litigant has objected); *Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962, 973, 447 N.E.2d 1358 (1983) (the proper remedy for joinder problems is for the court to order the addition of a missing party). The named plaintiffs in this action, BHI *et al.*, voluntarily dismissed their claims against the original defendants in 1994. They are no longer true and necessary parties. A necessary party is one with "a present substantial interest" in the matter before the court. *Keehner v. A.E. Staley Manufacturing Co.*, 50 Ill. App. 3d 258, 267, 365 N.E.2d 275 (1977).

■ Here, the true plaintiffs are the settling defendants, including Mesirow Realty Development, CCL of Chicago, Inc., Creative Construction, Ltd., Economy Mechanical Industries, Inc., and K&S Automatic Sprinklers. This action prosecutes the damage claims that the settling defendants purchased from the original plaintiffs for $4.5 million. Yet the settling defendants' names do not appear in the captions or pleadings of record. The settling defendants are necessary parties because no judgment entered for or against the nominal plaintiffs will yield a just result. The nominal plaintiffs have no interest in the subject matter of this suit—their rights and interests were extinguished by the terms of their agreements with the settling defendants. Finding that the settling defendants are necessary parties, we substitute Mesirow *et al.*, for BHI *et al.*, as the plaintiffs in this action.

■ We now turn to the substantive matter at hand—whether the circuit court erred in dismissing the settling defendants' assigned claims against Litgen. We apply the *de novo* standard of review to this legal question. *State Farm Insurance Co. v. Kazakova*, 299 Ill. App. 3d 1028, 1031, 702 N.E.2d 254 (1998).

■ Where, as here, two or more parties are subject to liability in tort arising from the same injury to property, the Act provides a right of contribution among them even though no judgment has been

entered against them. 740 ILCS 100/2(a) (West 1994). Contribution, once a common law right, is now a statutory remedy in which parties who are subject to tort liability arising from a single injury share the payment of damage awards. *Cosey v. Metro East Sanitary District*, 221 Ill. App. 3d 205, 209, 581 N.E.2d 914 (1991). The Act serves to sort out the relative rights of multiple defendants after the plaintiff has collected from among those defendants who are each fully responsible for all of the damages. *Lilly v. Marcal Rope & Rigging, Inc.*, 289 Ill. App. 3d 1105, 1114, 652 N.E.2d 807 (1997), *abrogated on other grounds in Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 783 N.E.2d 1024 (2002).

■ The Act limits tortfeasors to seeking contribution from other tortfeasors only if the party seeking contribution has paid more than its *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 1994). Once a tortfeasor has settled with a plaintiff under the protection of the Act, the tortfeasor is discharged from all liability for contribution to other tortfeasors (740 ILCS 100/2(d) (West 1994)) and the tortfeasor cannot recover contribution from another tortfeasor whose liability was not extinguished by the settlement (740 ILCS 100/2(e) (West 1994)).

■ The purpose of the Act is "to promote two important public policies—the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Johnson v. United Airlines*, 203 Ill. 2d 121, 133, 784 N.E.2d 812 (2003). The only limitation on the right to settle is that the settlement must be made in good faith. *Johnson*, 203 Ill. 2d at 128. Good faith is ascertained by a "totality-of-the-circumstances analysis" which gives effect to the public policies underlying the Act. *In re Guardianship of Babb*, 162 Ill. 2d 153, 162, 642 N.E.2d 1195 (1994). While public policy favors the peaceful settlement of claims, the court must be on guard for "evidence of collusion, unfair dealing or wrongful conduct by the settling parties." *Babb*, 162 Ill. 2d at 162.

■ Here, the supreme court concluded that the agreements, under which the settling defendants were attempting to pursue their assignment of the plaintiffs' claims against Litgen, were not "in good faith." *Dubina*, 197 Ill. 2d at 187. "By incorporating an agreement to obtain an object forbidden by law *** the settlement agreements do not satisfy the good-faith requirement of the Act." *Dubina*, 197 Ill. 2d at 196. In other words, the assignments flowing from a bad settlement cannot sanitize the settling defendants' attempt to collect contribution. The supreme court determined that the settling defendants could not, in the guise of plaintiffs, indirectly recover contribution from Litgen. *Dubina*, 197 Ill. 2d at 196. "By incorporating an agreement to

obtain an object forbidden by law, such agreements may be regarded as collusive" and "the settlement agreements violate both the terms of, and the policies underlying, the Act." *Dubina*, 197 Ill. 2d at 196.

The holding in *Dubina* compels the dismissal of this case because the assignments were unenforceable. The settling defendants initially attempted to use the Act to shield themselves from liability, but then, by the terms of the agreements, went outside the Act to pursue the nonsettling defendant, Litgen. Such a strategy clearly undermines the purpose of the Act to attain equitable apportionment of damages among tortfeasors. Litgen stood to pay considerably more than its just apportionment if the settling defendants successfully prosecuted their claims as assignees.

To circumvent the good-faith requirement of the Act, the settling defendants here devised a fallback strategy to abandon the protection of the Act, and then sue as assignees. While the settling defendants take the position that nothing in the Contribution Act prohibits an alternative strategy when a good-faith settlement is denied, there can be no question that their alternative strategy undermines the goal of the Act: settlement as an alternative to litigation. The dispute in this case was born of a property damage incident 14 years ago. To allow the settling defendants to first seek the benefits of the Act, and, if denied the benefits, to pursue an alternative course, insures that the goal of the Act is thwarted, and all parties (including the original plaintiffs) have nothing to look forward to but another round of litigation.

There is little doubt based on the record that the settlement originally crafted in this case would have met the good-faith test if a portion of the settlement funds had not been characterized as a price to be paid for the assignment of the plaintiffs' causes of action against the nonsettling defendants. The plaintiffs, wary of the strategy perhaps, included a clause in the settlement that shielded them from the settling defendants if the assignment was overturned on appeal. The agreement provided that the settling defendants would pay plaintiffs "irrespective of whether Litgen takes an appeal of the finding of good faith." That happened, but under the settling defendants' alternative strategy, there is nothing to prevent the nonsettling defendants from haling the original plaintiffs back into court to litigate the issue of contributory negligence, just as an example.

Seen in this light, the Contribution Act first has been used, then abused. The public policy that encourages the peaceful settlement of disputes as an alternative to litigation has been undermined. There is no way to unpack this luggage and start all over again without undermining the Act. As a matter of public policy, an assignment such

as the one in this case, born of a settlement that was found to be not made in good faith, must be held to be unenforceable.

The judgment of the circuit court dismissing this cause is affirmed.

Affirmed.

WOLFSON, P.J., and GARCIA, J., concur.