Docket No. 98073–Agenda 21–November 2004.

BHI CORPORATION 
et al.
, Appellants, v. LITGEN CONCRETE CUTTING & CORING COMPANY, Appellee.

Opinion filed March 24, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

This case is before us for the third time. The discrete issue in this appeal is whether defendants who enter settlement agreements with plaintiffs in which they purchase assignments of plaintiffs’ remaining claims against a nonsettling defendant may pursue these claims even though the settlement agreements and the assignments were not made in good faith. We agree with the appellate court that the settling defendants here may not pursue the assigned claims against the nonsettling defendant. We affirm.

BACKGROUND

In 1989, a building that housed art galleries and studios in Chicago’s River North district was destroyed in a fire. Scores of gallery owners and artists filed separate complaints against the owners and managers of the building, as well as the general contractors and subcontractors hired to renovate it. The complaint alleged that the various defendants, including Litgen Concrete Cutting and Coring Company (Litgen), caused or contributed to the fire.

The plaintiffs eventually settled all of their claims against all of the defendants except Litgen.
(footnote: 1) The settlement agreements charged that a Litgen employee caused the fire, but that Litgen “does not wish to cooperate with the Plaintiffs and Settling Defendants.” The settling defendants agreed to pay the plaintiffs $4.5 million for the release of any claims arising from the fire: “This amount shall be paid to Plaintiffs on the condition that the trial Court [
sic
] grants the parties *** a finding that the *** settlement is made in good faith” pursuant to the Contribution Act. “This payment,” the parties stated, “shall be paid irrespective of whether Litgen takes an appeal of the finding of good faith.” The settling defendants also agreed to pay the plaintiffs an additional $4.5 million for the assignment of any claims they may have against Litgen arising from the fire. The plaintiffs promised that they had not already released their claims against Litgen, that they would not release these claims without the written consent of the settling defendants, and that they would “reasonably cooperate” with the settling defendants in the pursuit of the assigned claims against Litgen. The settling defendants, in turn, promised to reimburse the plaintiffs for the cost of their cooperation.

The circuit court of Cook County found these agreements to be in good faith pursuant to section 2(c) of the Contribution Act (see 740 ILCS 100/2(c) (West 1994)) and dismissed Litgen’s contribution claims against the settling defendants pursuant to section 2(d) of the Act (see 740 ILCS 100/2(d) (West 1994)). The trial court allowed the plaintiffs to nonsuit their claims against Litgen.

Litgen appealed, arguing that the trial court erred in finding the agreements were made in good faith. While this appeal was pending, the settling defendants filed a complaint on the assigned claims against Litgen. Before the appellate court, the settling defendants filed a motion to dismiss Litgen’s appeal, asserting that the new complaint rendered the trial court’s good-faith finding nonfinal and unappealable, robbing the appellate court of jurisdiction. The appellate court agreed with the settling defendants and dismissed Litgen’s appeal. See 
Dubina v. Mesirow Realty Development, Inc.
, 283 Ill. App. 3d 36 (1996). We reversed and remanded to the appellate court. See 
Dubina v. Mesirow Realty Development, Inc.
, 178 Ill. 2d 496 (1997).

On remand, the appellate court initially noted that the settling defendants characterized their procedural posture as plaintiffs on the assigned claims, rather than as tortfeasors jointly liable with Litgen on the original claims. 
Dubina v. Mesirow Realty Development, Inc.
, 308 Ill. App. 3d 348, 355 (1999)
. The appellate court then stated:

“The argument is not without a certain 
laissez-faire
 appeal. But the Contribution Act, embodying the will of the legislature and the public policy of Illinois, is not a 
laissez-faire
 statute. The Act departs from the common law and awards settling defendants an incentive to resolve the issue of their liability without litigation by shielding them from further exposure. Having taken advantage of the shield afforded by the Act, [settling] defendants now wish to buy the sword of the original plaintiff[s].” 
Dubina
, 308 Ill. App. 3d at 355.

The appellate court observed that if the settling defendants could shed their roles as tortfeasors for the roles of unfettered plaintiffs, they could pursue a recovery otherwise prohibited by the Contribution Act. 
Dubina
, 308 Ill. App. 3d at 356. The appellate court continued:

“[T]he settlement agreements here allow settling defendants to recoup their share of damages, perhaps make a profit, and yet be shielded from contribution under the Contribution Act. The result is antithetical to the Contribution Act, whether it is achieved by ‘assignment’ or ‘contribution,’ and whether the settling defendants are labeled ‘plaintiffs’ or ‘joint tortfeasors.’ The assignments allow the settling defendants to seek indirectly a reimbursement the Contribution Act prohibits and undermine the equitable sharing of damages.” 
Dubina
, 308 Ill. App. 3d at 357.

The appellate court held that the trial court erred in finding the agreements were in made good faith, reversed the dismissal of Litgen’s contribution claims, and remanded to the trial court for further proceedings. 
Dubina
, 308 Ill. App. 3d at 358.
 

We granted the settling defendants’ petition for leave to appeal and affirmed. See 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d 185 (2001). We noted that, though property damage claims generally are assignable in Illinois, the assignments here must be considered in the context of the settlement agreements. 
Dubina
, 197 Ill. 2d at 194. We concluded that the settlement agreements, and by extension the assignments, violated the terms of and policies behind the Act. First, the agreements and assignments violated section 2(c) of the Act because they deprived Litgen of its statutory right to a setoff. 
Dubina
, 197 Ill. 2d at 195. The settling defendants labeled half of the $9 million it gave to the plaintiffs as a payment for the assignments; if Litgen lost at trial, it would not receive credit for $4.5 million exchanged between its joint tortfeasors and the plaintiffs. 
Dubina
, 197 Ill. 2d at 195. Second, the agreements and assignments defeated the Act’s goal of equitable apportionment of damages among joint tortfeasors. 
Dubina
, 197 Ill. 2d at 195-96. The settling defendants would recoup the settlement amount–$4.5 million–as well as any damages exceeding the $9 million it gave to the plaintiffs from Litgen if they succeeded on the assigned claims. 
Dubina
, 197 Ill. 2d at 196. Third, and finally:

“The settlement agreements and assignments also violate the Act because they allow the settling defendants to accomplish indirectly that which they could not do directly–recover contribution from Litgen. *** [T]he Act prohibits a settling tortfeasor from recovering contribution from another tortfeasor whose liability is not extinguished by the settlement. [Citation.] Here, the plaintiffs assigned their causes of action to the settling defendants, thereby allowing the settling defendants, in the guise of plaintiffs, to indirectly recover contribution from Litgen. By incorporating an agreement to obtain an object forbidden by law, such agreements may be regarded as collusive.” 
Dubina
, 197 Ill. 2d at 196, citing 
In re Guardianship of Babb
, 162 Ill. 2d 153, 172 (1994).

Because the agreements and the assignments violated the Act, they did not satisfy the good-faith requirement of the Act. 
Dubina
, 197 Ill. 2d at 196.

On remand, the settling defendants again refiled their complaint on the assigned claims against Litgen. Litgen filed a motion to dismiss, arguing that the settling defendants could not pursue the assigned claims because the settlement agreement which contained the assignments was not made in good faith. The trial court granted Litgen’s motion and dismissed the settling defendants’ complaint. The settling defendants appealed.

The appellate court affirmed. 346 Ill. App. 3d 300. The appellate court held that the trial court was compelled to dismiss the settling defendants’ complaint because, pursuant to our second opinion in 
Dubina
, the assignments were “unenforceable.” 346 Ill. App. 3d at 307. The appellate court explained that the settling defendants’ strategy of pursuing the assigned claims would undermine the two policies behind the Act
:

“The settling defendants initially attempted to use the Act to shield themselves from liability, but then, by the terms of the agreements, went outside the Act to pursue the nonsettling defendant, Litgen. Such a strategy clearly undermines the purpose of the Act to attain equitable apportionment of damages among tortfeasors. ***

To circumvent the good-faith requirement of the Act, the settling defendants here devised a fallback strategy to abandon the protection of the Act, and then sue as assignees. While the settling defendants take the position that nothing in the Contribution Act prohibits an alternative strategy when a good-faith settlement is denied, there can be no question that their alternative strategy undermines the goal of the Act: settlement as an alternative to litigation. *** To allow the settling defendants to first seek the benefits of the Act, and, if denied the benefits, to pursue an alternative course, insures that the goal of the Act is thwarted, and all parties (including the original plaintiffs) have nothing to look forward to but another round of litigation.” 
346 Ill. App. 3d at 307.

The appellate court observed that the settlement agreements would have met the good-faith requirement if a portion of the settlement amount had not been labeled a payment for the assignments of the plaintiffs’ claims. 346 Ill. App. 3d at 307. In strong language, the appellate court concluded:

“[T]he Contribution Act first has been used, then abused. The public policy that encourages the peaceful settlement of disputes as an alternative to litigation has been undermined. There is no way to unpack this luggage and start all over again without undermining the Act. As a matter of public policy, an assignment such as the one in this case, born of a settlement that was found to be not made in good faith, must be held to be unenforceable.” 346 Ill. App. 3d at 307-08.

We granted the settling defendants’ petition for leave to appeal. 177 Ill. 2d R. 315(a). On the law issues before us, our review proceeds 
de novo
. 
Hawes v. Luhr Brothers, Inc.
, 212 Ill. 2d 93, 98 (2004).

ANALYSIS

The Contribution Act codified our opinion in 
Skinner v. Reed-Prentice Division Package Machinery Co.
, 70 Ill. 2d 1 (1977), and created a right of contribution among joint tortfeasors. See 740 ILCS 100/2(a) (West 2002). A defendant who has paid more than its 
pro rata
 share of damages to the plaintiff has a right of contribution from its codefendants. See 740 ILCS 100/2(b) (West 2002). A good-faith settlement discharges any contribution liability for settling defendants (see 740 ILCS 100/2(d) (West 2002)) and it reduces the amount of any recovery against nonsettling defendants (see 740 ILCS 100/2(c) (West 2002)). A good-faith settlement, however, does not entitle settling defendants to recover contribution from nonsettling defendants. See 740 ILCS 100/2(e) (West 2002).

The settling defendants acknowledge that our last opinion in this case 
held that the settlement agreements were not made in good faith because they were conditioned upon the plaintiffs’ assignments. See 
Dubina
, 197 Ill. 2d at 194 (“the assignments were a condition precedent to the settlement agreements”). The settling defendants argue, however, that our last opinion did not affect the legal validity of the settlement agreements or the assignments that they contained. They assert that “[t]he Contribution Act behaves as a carrot, not a stick.” According to the settling defendants, “At most, the absence of good-faith findings made the [settling defendants’] claims against Litgen potentially less valuable by exposing them to Litgen’s counterclaims for contribution. It did not eliminate the [settling defendants’] right to assert those claims.” In short, the settling defendants insist that they simply wish to abandon the protection that a good-faith settlement would provide under the Act and proceed on the assigned claims against Litgen, subject to its contribution claims.

The settling defendants describe the assigned claims as “garden variety claims for property damage.” That characterization, however, ignores the history and context of those claims. As we noted in our last opinion in this case, “we cannot look at the assignment of plaintiffs’ claims in a vacuum, but must consider the assignments in conjunction with the settlement agreements.” 
Dubina
, 197 Ill. 2d at 194. A more candid description of the claims here would be “property damage claims bought for millions of dollars from the original plaintiffs as part of a settlement agreement found not to be made in good faith.” The fact that the assignees were the settling defendants may not, as they contend, alter the nature of the claims that were assigned (see 
Collins Co. v. Carboline Co.
, 125 Ill. 2d 498, 512 (1988) (“Once made, an assignment puts the assignee into the shoes of the assignor”)), but it does affect our analysis of whether public policy allows the settling defendants to prosecute them.

As we have consistently stated, the Act furthers two policies: promoting settlement and ensuring equitable apportionment of damages. See 
Johnson v. United Airlines
, 203 Ill. 2d 121, 133 (2003). Specifically, the Act promotes settlement by providing that a defendant who enters a good-faith settlement with the plaintiff is discharged from any contribution liability to a nonsettling defendant. 
Babb
, 162 Ill. 2d at 171, citing 740 ILCS 100/2(c), (d) (West 1992). The Act ensures equitable apportionment of damages, mainly, by creating a right of contribution among defendants. 
Babb
, 162 Ill. 2d at 171, citing 740 ILCS 100/2(b) (West 1992). But it also ensures equitable apportionment of damages “by providing that the amount that the plaintiff recovers on a claim against any other nonsettling tortfeasors will be reduced or set off by the amount stated in the settlement agreement.” 
Babb
, 162 Ill. 2d at 171, citing 740 ILCS 100/2(c) (West 1992). Further, the Act provides that a settling joint tortfeasor may not recover contribution from a nonsettling joint tortfeasor. See 740 ILCS 100/2(e) (West 2002). This rule, too, fosters equitable apportionment because it prevents a settling defendant, who decides how to value its liability, from obtaining contribution from a nonsettling defendant, whose 
pro rata
 share of damages has not yet been fixed by a fact finder. The settling defendants here play up their purported willingness to forgo the protections that the Act offers to joint tortfeasors who settle in good faith. They have no choice, after the holding in our last opinion that 
the settlement agreements and assignments together violated section 2(e) of the Act. See 
Dubina
, 197 Ill. 2d at 196.

Section 2(e) provides, “A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.” 740 ILCS 100/2(e) (West 2002). Here, Litgen’s potential liability was not snuffed, but rather kindled, by the settlement agreements, so the settling defendants could resort to their “fallback strategy” and pursue the assigned claims in the event that they could not obtain a good-faith finding.
(footnote: 2) Looks are not deceiving. Whether the recovery sought by the settling defendants is grounded upon the Contribution Act or the assignments, it is still contribution from a nonsettling tortfeasor. As the appellate court aptly stated, “the assignments flowing from a bad settlement cannot sanitize the settling defendants’ attempt to collect contribution.” 346 Ill. App. 3d at 306.

An arrangement by which a settling defendant attempts to obtain indirect contribution from a nonsettling defendant by an assignment of claims violates the Contribution Act. We cannot allow the settling defendants to contract an end run around section 2(e). Accordingly, we hold that the settling defendants may not pursue the assigned claims. See 
Alder v. Garcia
, 324 F.2d 483, 485 (10
th Cir. 1963); 
DeJong v. B.F. Goodrich, Inc.
, 96 Mich. App. 36, 41, 292 N.W.2d 157, 160 (1980). Contrary to the settling defendants’ contentions, this holding does not subvert the Act by creating a limitation that the legislature did not express. Rather, this opinion, like our opinion in 
Babb
, bolsters the Act and its policy of equitable apportionment.

CONCLUSION

For the reasons that we have stated, we affirm the appellate court’s judgment.

Affirmed
.

JUSTICE FREEMAN, specially concurring:

In 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d 185, 198 (2001) (Harrison, C.J., dissenting, joined by Freeman and Kilbride, JJ.)
, the majority held that the agreements between the plaintiffs and the settling defendants, violated the terms of the Joint Tortfeasor Contribution Act (740 ILCS 100/2 (West 1994)), because the agreements deprived Litgen, the nonsettling defendant, of its right to a setoff. Under the agreements, the settling defendants paid $4.5 million to the plaintiffs in settlement of the plaintiffs’ claims, and $4.5 million for the assignments of the plaintiffs’ claim against the nonsettling defendant. Thus, Litgen was only entitled to a setoff of $4.5 million, although the plaintiffs had received $9 million. The 
Dubina
 court also held that the agreements defeated the Act’s purpose of equitably distributing among all joint tortfeasors the burden of compensating a plaintiff. The settling defendants stood to recoup the $4.5 million denominated as payment for the assignments as well as any damages exceeding $9 million. Thus, the settling defendants could accomplish indirectly that which they could not do directly–recover contribution from Litgen. The majority remanded the cause for further proceedings.

In dissent, Chief Justice Harrison noted that when a settling tortfeasor can establish that the settlement was supported by consideration, that is 
prima facie
 evidence of the settlement’s good faith. Once a preliminary showing of good faith is made, a presumption arises that the settlement is valid, and the burden shifts to the party challenging the settlement to show that it was not made in good faith. Chief Justice Harrison opined that the trial court did not abuse its discretion when it determined that the agreements were in good faith. Further, Chief Justice Harrison maintained that the agreements facilitated rather than impeded the settlement process, and supported the policy of the Act. Chief Justice Harrison found no merit to the contention that the assignments would apportion the burden of damages among defendants inequitably. Lastly, Chief Justice Harrison noted that any concern about the potential setoff was premature because Litgen had not yet been found liable for damages at a trial. Moreover, while the terms of the agreements allocated only half of the total consideration paid to the settlement, the Act makes clear such labels are not controlling. If the trial court ultimately determined that the full $9 million should be attributed to the settlement, it could allow the full $9 million as a setoff, notwithstanding the fact that the agreements allocated only $4.5 million to the settlement.

On remand, the settling defendants attempted to pursue the claims that the plaintiffs had assigned to them. Litgen filed a motion to dismiss, arguing that the settling defendants could not pursue the assigned claims because the settlement agreements which contained the assignments were not made in good faith. The trial court granted the motion and dismissed the settling defendants’ complaint. The appellate court affirmed. This court granted leave to appeal, and now affirms.

In today’s opinion, the majority holds that the settling defendants may not pursue the assigned claim against Litgen. In doing so, the majority rejects the settling defendants’ argument that they want to abandon the protection that a good-faith settlement provides under the Act and proceed on the assigned claims against Litgen. The majority states that whether the recovery sought by the settling defendants is grounded upon the Act or the assignments, it is still contribution from a nonsettling tortfeasor. The majority concludes that an arrangement by which a settling defendant attempts to obtain indirect contribution from a nonsettling defendant by an assignment of claims violates the Act and is unenforceable. 

The majority’s reasoning is consistent with 
Dubina
, 197 Ill. 2d 185. In 
Dubina
 the court specifically noted: “The settlement agreements and assignments also violate the Act because they allow the settling defendants to accomplish indirectly that which they could not do directly–recover contribution from Litgen. *** [T]he Act prohibits a settling tortfeasor from recovering contribution from another tortfeasor whose liability is not extinguished by the settlement.” 
Dubina
, 197 Ill. 2d at 196. 
Dubina
 being settled law, I must reluctantly join in the result reached by the majority. 

The result reached by the majority, however, is troubling. In 
Dubina
 the court held that the settlement agreements were not entered into in good faith because the agreements conditioned settlement upon assignments of the plaintiffs’ claims. In today’s opinion, the majority holds that the assignments are unenforceable because they flowed from the settlement agreements. The end result is that Litgen, the nonsettling defendant whose employee may have caused the fire, is relieved of liability for the moment. The original plaintiffs dismissed their action against Litgen years ago. The plaintiffs have no interest in the matter, having pocketed the $9 million from the settling defendants. Thus, Litgen is no longer liable to the plaintiffs. As the majority now holds, the assignments of the plaintiffs’ claims are unenforceable and the settling defendants cannot recover the $4.5 million paid for the assignments or any other monies from the nonsettling defendant. To prevent the settling defendants from recovering contribution from Litgen, the court may be allowing Litgen to shed its liability for a fire started in all probability by its employee.

Another aspect of the majority opinion is also troubling. It was noted in 
Dubina
, 197 Ill. 2d at 188, 
that some of the assignees were insurance companies and other nonparties. The majority opinion in the present case does not seem to distinguish between the assignees who were settling defendants and the assignees who were insurance companies and other nonparties. Is it to be understood that the assignments to the insurance companies and other nonparties are also unenforceable? If so, on what grounds? The rationale for striking the settlement agreements and the assignments is that the settling defendants, being tortfeasors, should not be able to recover contribution from another tortfeasor whose liability is not extinguished by the settlement. Does this rationale hold for the insurance companies and other nonparties? Clarification is needed.

Although the result in the present case follows from 
Dubina
, it represents an anomaly in law and justice. As acknowledged by the majority, the Contribution Act was intended to ensure equitable apportionment of damages among tortfeasors. See slip op. at 7. The result reached today is simply incompatible with the policy of equitable apportionment of damages. It is an aberrance that challenges the legislature to reconsider the matters at issue and make the appropriate public policy determinations. 

JUSTICE KILBRIDE joins in this special concurrence.

FOOTNOTES
1:     
1
Another defendant, Gelick Foran Associates, Inc., did not settle, but it later received summary judgment and plays no role in this appeal.

2:     
2
 In a sense, the phrase “fallback strategy,” coined by the settling defendants in their opening brief, is misleading. Certainly, they pressed the assigned claims after they did not obtain a good-faith finding, but it seems likely they would have pursued them even if they did obtain a good-faith finding.