(No. 80383.

CURTIS BRAYE v. ARCHER-DANIELS-MIDLAND
COMPANY, Appellant (All Tri-R, Inc., Appellee).

*Opinion filed February 6, 1997.*

BILANDIC, J., took no part.

Frederic L. Kenney, of Winters, Featherstun, Gaumer, Kenney, Postlewait & Stocks, of Decatur, for appellant.

Alexander M. Wilson, of Edwardsville, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

This interlocutory appeal arises from two questions which were certified by the circuit court pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). First, we are asked to determine whether the liability cap provided to an employer who has paid an injured employee's workers' compensation benefits (*Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991)) may be waived by contract. We also are asked to determine whether the alleged contractual language at issue in the case at bar operates as a waiver of the *Kotecki* cap or whether it is void for being in violation of the Construction Contract Indemnification for Negligence Act (740 ILCS 35/0.01 *et seq.* (West 1994)).

## BACKGROUND

On June 12, 1991, the plaintiff, Curtis Braye, sustained injuries after falling from a motorized scaffold, while working as a welder on a construction site at Archer-Daniels-Midland's (ADM) manufacturing facility in Decatur, Illinois. Braye filed a workers' compensation claim against his employer, All Tri-R, Inc., which was settled for $172,000. In 1993, Braye filed an action against ADM alleging violations of the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.* (subsequently 740 ILCS 150/0.01 *et seq.* (West 1992)) (repealed by Pub. Act 89—2, eff. February 14, 1995)), and common law negligence.

In February of 1994, ADM filed its answer to Braye's complaint as amended, denying the allegations. ADM also filed a third-party action against All Tri-R, seeking contribution pursuant to the Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*). In its initial prayer for relief, ADM sought contribution in an amount commensurate with All Tri-R's relative degree of culpability in proximately causing Braye's injuries, but not to exceed All Tri-R's maximum liability under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)), consistent with this court's decision in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). In *Kotecki*, this court held that an employer's contribution liability to a third-party plaintiff is limited to the amount of workers' compensation benefits paid to the injured employee. *Kotecki*, 146 Ill. 2d 155.

In March of 1995, ADM filed a motion for leave to amend its request for contribution from All Tri-R, now seeking an amount commensurate with All Tri-R's relative degree of culpability and no longer limited by All Tri-R's workers' compensation liability.[1] ADM premised its motion to amend on a purchase order which alleg-

---

[1]For the sake of clarity, we note that the appellate court

edly governed the work in question. The purchase order states, in pertinent part:

"If [All Tri-R's] work under the order involves operations by [All Tri-R] on the premises of [ADM] or one of its customers, [All Tri-R] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri-R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R], its agents, employees or subcontractors."

ADM maintained that because this language evidenced All Tri-R's intent to remain liable for all loss resulting from All Tri-R's own negligence, ADM should be permitted to file its amended request for contribution from All Tri-R without the limitation announced in *Kotecki*. ADM argued that the purchase order established that All Tri-R had bargained away any potential limit on its contribution liability in a third-party action, including the limit set forth in *Kotecki*. Additionally, ADM urged the circuit court to follow *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489 (1994), where the court held that an employer is free to forgo the protection of the *Kotecki* cap by virtue of a contract which preceded the litigation.

All Tri-R responded to ADM's motion to amend by arguing that the purchase order could be read as allowing indemnity for ADM's own negligence and therefore was void and unenforceable under the Construction Contract Indemnification for Negligence Act (Indemnifi-

---

observed that ADM attempted to amend its prayer for relief based on language contained in a general contract for construction at ADM's plant. The appellate court further observed that the circuit court denied ADM's motion, finding the contract was void. The record before us does not contain this motion, and the issue concerning the general contract is not before us on appeal.

cation Act) (740 ILCS 35/0.01 *et seq.* (West 1994)). All Tri-R maintained that the purchase order was at best ambiguous. As such, All Tri-R argued, the ambiguity must be construed against ADM, which allegedly drafted the purchase order in question. Finally, All Tri-R argued that even if the purchase order did not violate the Indemnification Act, *Herington* was decided incorrectly.

Following a hearing on the motion, the circuit court concluded that the language of the purchase order did not violate the Indemnification Act. The court also determined that *Herington* controlled its ruling because *Herington* recognized that an employer may waive its right to assert *Kotecki* as a defense to a third-party action for contribution. Accordingly, the court allowed ADM to file an amended third-party complaint seeking contribution from All Tri-R in an amount commensurate with its relative degree of culpability. The court then certified the following questions pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

> "Whether the liability cap in third-party actions provided to an employer who pays an injured employee's worker['s] compensation benefits may be waived by contract, and if so, whether a contract which states:
>
>> 'If [All Tri-R's] work under the order involves operations by [All Tri-R] on the premises of [ADM] or one of its customers, [All Tri-R] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri-R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R], its agents, employees or subcontractors[ ]'
>
> is an enforceable contract for contribution."

The appellate court answered the first question in the affirmative, holding that an employer is free to

decide whether to forgo the *Kotecki* limit by virtue of a contract. 276 Ill. App. 3d 1066, 1070. However, the appellate court went on to find that the language of the purchase order was void and unenforceable because it violated the Indemnification Act. 276 Ill. App. 3d at 1070-71. We granted ADM's petition for leave to appeal. 155 Ill. 2d R. 315(a).

## ANALYSIS

### I

We first address the question of whether the liability cap on an employer's contribution liability in a third-party action may be relinquished by contract. ADM submits that this court should adhere to the holding and rationale in *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489 (1994). In *Herington*, the court held that in the context of a third-party action, an employer's promise to pay for liability attributable to its own negligence operated as a waiver of the limitation set forth in *Kotecki*. Accord *Liccardi v. Stolt Terminals (Chicago), Inc.*, 283 Ill. App. 3d 141 (1996). The court reasoned that because an employer may waive the affirmative defense contained in section 11 of the Workers' Compensation Act in a direct action initiated by an employee (*Doyle v. Rhodes*, 101 Ill. 2d 1 (1984)), it may also waive the liability limitation announced in *Kotecki* in anticipation of third-party litigation. ADM maintains that *Herington* does not undermine *Kotecki* because it is consistent with the notion that an employer should be able to contract for its potential liability. ADM also contends that the rule in *Herington* advances two important public policies: the policy which favors holding parties responsible for their contractual obligations, and the policy which favors the allocation of liability according to the parties' relative fault in order to promote workplace safety.

All Tri-R counters, without citation to relevant authority, that the rationale of *Herington* is flawed because the limitation on an employer's contribution liability set forth in *Kotecki* cannot be equated with an affirmative defense. All Tri-R further argues that the rule announced in *Herington* contravenes the Workers' Compensation Act as interpreted by *Kotecki*. Moreover, All Tri-R contends that *Herington* was decided erroneously because the Workers' Compensation Act is the sole measure of an employer's liability, regardless of an employer's attempt to modify its rights under the Act. See 820 ILCS 305/11 (West 1994).

We reject All Tri-R's argument that the *Kotecki* cap cannot be waived by contract. In *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984), this court was called upon to determine whether the immunity of an employer from an action at law by an injured employee provided by sections 5(a) and 11 of the Workers' Compensation Act also bars an action for contribution against the employer by a third party who was partially responsible for the employee's injury. Section 11 provides, in relevant part, that the Act "shall be the measure of the responsibility of any employer ***." 820 ILCS 305/11 (West 1994). This court determined that section 11 is an affirmative defense to a common law action brought by an employee for a work-related injury. *Doyle*, 101 Ill. 2d at 10; *Robertson v. Travelers Insurance Co.*, 95 Ill. 2d 441 (1983). As such, an employer's potential for tort liability exists unless and until the defense of the Workers' Compensation Act is established. *Doyle*, 101 Ill. 2d at 10-11. The court then construed the Contribution Act and held that the legislature intended the Contribution Act to apply to an employer in a third-party action regardless of an employer's immunity from a direct action by the employee. *Doyle*, 101 Ill. 2d at 13-14.

We agree with ADM's contention that *Doyle* is rele-

vant to our inquiry insofar as it recognized that an employer has the option to determine whether to use the Workers' Compensation Act as a shield from an action brought outside of the statutory scheme contemplated by the Workers' Compensation Act. In the context of a direct action brought by an employee, an employer generally may be expected to avail itself of the protection afforded by the Workers' Compensation Act. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514 (1994). However, an employer may choose not to invoke the Act based on its expectation that the plaintiff's common law negligence claim will fail. *Geise*, 159 Ill. 2d at 514. This choice would enable the employer to evade liability completely. *Geise*, 159 Ill. 2d at 514; see, *e.g.*, *Rhodes v. Industrial Comm'n*, 92 Ill. 2d 467 (1982) (employee's recovery in a common law action barred further recovery from the employer under the Workers' Compensation Act).

ADM maintains that just as an employer has the right to decide whether to avail itself of the protections of the Workers' Compensation Act in a direct action brought by an employee, the employer also has the option to decide, in advance of potential litigation by injured employees, whether to avail itself of the Act's protections in a third-party action for contribution. In essence, ADM simply maintains that if an employer determines it advantageous to promise to assume liability for its own negligence, it may not avoid its contractual agreement if it later perceives the promise to be detrimental. According to ADM, neither the Workers' Compensation Act nor our decision in *Kotecki* prohibits an employer from entering into an agreement prior to the commencement of litigation to assume full liability for damages commensurate with its relative degree of fault. We agree.

Initially, we note that the Workers' Compensation

Act does not expressly preclude the operation of the basic tenets of contract law where a workers' compensation claim is involved. *Fredericks v. Liberty Mutual Insurance Co.*, 255 Ill. App. 3d 1029 (1994). The Workers' Compensation Act contemplates a trade-off between an employer and an employee in which the employee relinquishes his or her right to recover damages for work-related injuries under a common law negligence theory, while the employer forgoes common law defenses in exchange for liability that is fixed according to a statutory scheme. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978). This statutorily imposed bargain promotes the fundamental purpose of the Act, which is to "afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay*, 74 Ill. 2d at 180-81.

The equilibrium contemplated by the Workers' Compensation Act may be disrupted when an employer pays benefits to an injured employee and later is sued by a third party for contribution in an action involving the same injured employee. *Kotecki*, 146 Ill. 2d 155. In *Kotecki*, this court restored the balance of the Workers' Compensation Act, in light of the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 1992)), by weighing the competing interests of the employer as a participant in the workers' compensation system, and the equitable interest of the third-party plaintiff in not being forced to pay more than its established fault. *Kotecki*, 146 Ill. 2d at 164.

*Kotecki* confirmed *Doyle*'s conclusion that "a negligent employer *is liable* for contribution to a third party, regardless of the Workers' Compensation Act." (Emphasis in original.) *Kotecki*, 146 Ill. 2d at 160. A third party's right of contribution exists from the time that the person seeking recovery is injured. *Rakowski v. Lucente*, 104 Ill. 2d 317 (1984). In holding that a third-party

plaintiff may seek contribution limited only by the amount of workers' compensation benefits paid by the employer, this court upheld a third-party defendant's right to contribution, while preserving the employer's important right to rely on the protection of the Workers' Compensation Act. *Lannom v. Kosco*, 158 Ill. 2d 535, 540 (1994).

Our concern for the employer in *Kotecki* centered on "whether the employer will be *forced* to pay too much, thereby losing the protection that the Workers' Compensation Act is supposed to provide." (Emphasis added.) *Kotecki*, 146 Ill. 2d at 163. The law is clear that an employer may not be compelled to forgo the protections of the Workers' Compensation Act. However, the relief sought by ADM in this case is premised upon an allegation that All Tri-R *voluntarily* decided to forgo the protection of the Act by virtue of its promise. We determine that nothing in *Kotecki* prohibits an employer from agreeing to remain liable for its *pro rata* share of damages proximately caused by its negligence, notwithstanding the employer's ability to avail itself of the *Kotecki* cap on its liability.

We further conclude that neither the language of the Workers' Compensation Act nor public policy prohibits our determination that an employer may waive the protection of the Workers' Compensation Act. Section 23 of the Workers' Compensation Act provides that "[n]o *employee* *** shall have power to waive any of the provisions of this Act in regard to the amount of compensation which may be payable to such employee *** except after approval by the Commission ***." (Emphasis added.) 820 ILCS 305/23 (West 1994). In enacting section 23 of the Workers' Compensation Act, the General Assembly made an inherent determination regarding the relative bargaining power between an employer and an employee. See generally *Checker Taxi*

*Co. v. Industrial Comm'n*, 343 Ill. 139 (1931) (employer could not escape workers' compensation liability by virtue of a contract with its employee). No similar prohibition exists with respect to an employer's power to forgo its rights under the Act.

This court held in *Board of Education v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469 (1981), that the Workers' Compensation Act does not prevent parties from agreeing to supplement the benefits conferred by the Act. In *Board of Education*, an employee sought to enforce provisions of a collective-bargaining agreement between the Chicago board of education and the Chicago Teacher's Union. Under the terms of the agreement, the board had agreed to provide employees with certain benefits in cases where a teacher had been assaulted. However, the board sought to avoid its promise by arguing that enforcement of the agreement would be contrary to provisions of the Workers' Compensation Act, which provide that the Act is the exclusive remedy for employee claims. See Ill. Rev. Stat. 1977, ch. 48, pars. 138.5, 138.11.

This court rejected the board's arguments and determined that the agreement at issue merely provided for supplemental benefits for employees who were subjected to special dangers. *Board of Education*, 86 Ill. 2d at 475. These benefits were contemplated outside of and in addition to the benefits under the Workers' Compensation Act. Finally, we concluded that the exclusive remedy provision of the Workers' Compensation Act does not bar this type of benefit. *Board of Education*, 86 Ill. 2d at 475.

The common thread in *Doyle, Kotecki* and *Board of Education* is that an employer has the power to waive those protections afforded by the Workers' Compensation Act which are intended to benefit the employer. An employer's decision to invoke or relinquish the protec-

tions of the Workers' Compensation Act may involve considerations of business judgment. See generally *Geise*, 159 Ill. 2d at 514. Therefore, we conclude that the appellate court in *Herington* properly followed *Doyle* to its logical conclusion by determining that the decision to forgo the protection of the Workers' Compensation Act is within the realm of discretionary business decisions made by an employer and does not violate the terms or policy of the Act. Indeed, our decision that an employer may relinquish the liability limitation set forth in *Kotecki*, by contract, is consistent with Illinois public policy which favors freedom of contract. See *Electrical Contractors' Ass'n v. A.S. Schulman Electric Co.*, 391 Ill. 333 (1945).

We note that the dissenting justice in the appellate court maintained that an alleged inequality of bargaining power between All Tri-R and ADM would not permit the enforcement of a provision in which All Tri-R purportedly waived the *Kotecki* cap. Disparity in bargaining positions is often a factor considered in determining whether a contract is unconscionable under the facts of a case. *Boatmen's National Bank v. Benton*, 219 Ill. App. 3d 117 (1991). We note that courts generally are reluctant to find a contract unconscionable due to unequal bargaining power where both parties are business entities. See, *e.g.*, *Dillman & Associates, Inc. v. Capitol Leasing Co.*, 110 Ill. App. 3d 335 (1982). However, because All Tri-R did not make such an argument before this court and because nothing in the record at this early juncture in the litigation supports the dissent's conclusion, we find it inappropriate to address this issue further.

In response to the first question certified by the circuit court in the case at bar, we hold that Illinois law and public policy do not prohibit the enforcement of a contract whereby an employer agrees to remain liable

for the full amount of damages attributable to its own negligence, notwithstanding the *Kotecki* cap.

## II

Because we hold that public policy is not violated by an employer's decision to waive the protection afforded by the Workers' Compensation Act, we now consider the second question certified by the circuit court:

"whether a contract which states:

'If [All Tri-R's] work under the order involves operations by [All Tri-R] on the premises of [ADM] or one of its customers, [All Tri-R] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri-R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R], its agents, employees or subcontractors[ ]'

is an enforceable contract for contribution."

The circuit court concluded that *Herington* controlled its ruling, and therefore permitted ADM to amend its third-party complaint to seek contribution from All Tri-R without the *Kotecki* limit. The circuit court determined that the pertinent language of the purchase order constituted more an agreement for contribution than for indemnity, and held that the purchase order was not void as being violative of section 1 of the Indemnification Act (740 ILCS 35/0.01 (West 1994)). The appellate court agreed that *Herington* was decided correctly, but reversed the circuit court on the basis that the language of the purchase order violated section 1 of the Indemnification Act and thus was void and unenforceable. 276 Ill. App. 3d 1066.

On appeal, ADM argues that paragraph 12 of the purchase order does not violate the Indemnification Act

because it provides that All Tri-R agreed to pay for "all" liability stemming from "any act or omission of [All Tri-R], its agents, employees or subcontractors," *i.e.*, *its own* negligent conduct. ADM acknowledges that it is prohibited from seeking indemnity from All Tri-R, and maintains that its third-party action does not seek to enforce paragraph 12 as a promise to indemnify. ADM argues that its third-party complaint clearly states that it is seeking contribution consistent with the Contribution Act. ADM contends that All Tri-R cannot rely on *Kotecki* to alter the terms of the contract which show All Tri-R's intent to accept "all" financial responsibility for its own negligence.

In essence, ADM urges us to hold that if a determination of relative liability between All Tri-R and ADM is made, and if the percentage of fault attributed to All Tri-R's negligence equals a sum greater than the $172,000 workers' compensation benefits, then All Tri-R must pay the full amount of damages attributable to its own negligence, notwithstanding *Kotecki*. ADM submits that paragraph 12 merely bars All Tri-R from attempting to limit its liability because All Tri-R promised to "pay for all loss" stemming from its own negligent acts, without qualification or reference to potential limitations, such as the one set forth in *Kotecki*.

All Tri-R responds that the language of paragraph 12 is an improper indemnification agreement because the clause which reads "except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence" suggests that if there is concurrent fault between All Tri-R and ADM, then the financial burden of a loss shifts to All Tri-R. On appeal, All Tri-R argues that the language of paragraph 12 is clearly an indemnity agreement. We note that at the trial court level, All Tri-R argued that the language of the purchase order is at best ambigu-

ous. On appeal, All Tri-R contends that the language of the purchase order does not embrace the concept of *pro rata* fault, and therefore cannot be construed as evidence of All Tri-R's intent to waive *Kotecki* and be bound only by the Joint Tortfeasor Contribution Act. 740 ILCS 100/2(b) (West 1992) (allows one joint tortfeasor to obtain damages from another tortfeasor in an amount "paid by him in excess of his pro rata share" of the common liability).

Section 1 of the Indemnification Act provides in relevant part:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building structure, *** every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 1994).

In order to evaluate the parties' contentions, we look to the purpose of the Indemnification Act as well as cases in which the Indemnification Act has been implicated or interpreted. We also consider basic tenets of contract law and general principles governing the right to contract.

We note that while courts will not enforce an agreement which is contrary to public policy (*O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333 (1989); see also *Rome v. Upton*, 271 Ill. App. 3d 517 (1995); *Holstein v. Grossman*, 246 Ill. App. 3d 719 (1993)), a contract should not be deemed illegal unless it is expressly contrary to the law or public policy (*Rome*, 271 Ill. App. 3d at 520). The laws and the public policy of the state permit and require freedom of contracting between competent parties. *Electrical Contractors' Ass'n v. A.S. Schulman Electric Co.*, 391 Ill. 333 (1945), citing *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180 (1910). Whether a contract is contrary to public policy depends

on the peculiar facts and circumstances of each case, as well as the language of the contract itself. *O'Hara,* 127 Ill. 2d at 341-42; *Electrical Contractors' Ass'n,* 391 Ill. at 339.

On appeal, neither party argues that factual issues remain to be determined with respect to the purchase order. The parties urge this court to construe the provision at issue as a matter of law.

This court has previously considered the purpose of the Indemnification Act. See *Davis v. Commonwealth Edison Co.,* 61 Ill. 2d 494 (1975); *Capua v. W.E. O'Neil Construction Co.,* 67 Ill. 2d 255 (1977). In *Davis,* this court reasoned:

> "It is generally known that indemnity and hold-harmless agreements are most widely used in the construction industry. The legislature in enacting section 1 may have considered that the widespread use of these agreements in the industry may have removed or reduced the incentives to protect workers and others from injury. *** The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions." *Davis,* 61 Ill. 2d at 498-99.

The purposes of the Indemnification Act were again examined in *Capua,* 67 Ill. 2d 255. There, sections 1 and 3 of the Act were harmonized. Section 3 provides that the Act "does not apply to construction bonds or insurance contracts or agreements." 740 ILCS 35/3 (West 1994). In *Capua,* this court confirmed the legislative purpose set forth in *Davis* and further determined that section 3 deals with an additional protective interest— the interest of construction workers, as well as members of the general public who sustain construction related injuries, in supplemental sources of compensation. *Capua,* 67 Ill. 2d at 260. *Davis* and *Capua* demonstrate that as a matter of public policy, courts will not enforce promises to indemnify contained in construction con-

tracts because their dominant aspect is the disincentive for the indemnitee to exercise care. See *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494 (1975); *Capua v. W.E. O'Neil Construction Co.*, 67 Ill. 2d 255 (1977); see also *GTE North, Inc. v. Henkles & McCoy, Inc.*, 245 Ill. App. 3d 322, 329 (1993).

As a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract. *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697 (1994). It is presumed that parties contract with knowledge of the existing law. *Monroe Dearborn Ltd. Partnership v. Board of Education*, 271 Ill. App. 3d 457 (1995). Additionally, we recognize that a construction of a contract which renders the agreement enforceable rather than void is preferred. *Schiro v. W.E. Gould & Co.*, 18 Ill. 2d 538 (1960).

At the time of the parties' contract in this case, ADM was presumed to know that indemnity promises are void in violation of public policy, and that a court would not enforce any contractual language which would suggest such a promise. In fact, ADM concedes that from the inception of the contract, any attempt to seek indemnity from All Tri-R would be futile. Consequently, we cannot conclude that paragraph 12 extinguished ADM's incentive to exercise care with respect to the construction taking place on its premises. Furthermore, it is not readily apparent that indemnity is the dominant aspect of paragraph 12.

We hold that under the facts and circumstances of this case, paragraph 12 is not void as being violative of the Indemnification Act. We note that ADM's third-party complaint expressly states that it seeks contribution pursuant to the Contribution Act. Thus, the policies of the Contribution Act are not offended by ADM's prayer for relief because the goals of achieving comparative fault and encouraging good-faith settlement remain intact.

218

In summary, we hold that an employer may enter into a valid and enforceable contractual agreement to waive the *Kotecki* limitation on the employer's contribution liability. We further hold that the purchase order in the case at bar is not void as being violative of the Indemnification Act.

*Certified questions answered;*
*appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed;*
*cause remanded to the circuit court.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.