**FIRST DIVISION**
December 31, 2007

No. 1-05-3567

| | | |
|---|---|---|
| THE PIERRE CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LINCOLN PARK WEST ASSOCIATES, LLC., an Illinois Limited Liability Company; BAKER DEVELOPMENT CORPORATION, an Illinois Corporation; McCAULEY CONSTRUCTION CORPORATION, an Illinois Corporation; and CASE FOUNDATION COMPANY, a Maryland Corporation Doing Business in Illinois, | ) ) ) ) ) ) ) | |
| Defendant | ) ) ) ) | No. 00 L 14319 01 M1 015653 01 L 01036 |
| (Lincoln Park West Associates, LLC., an Illinois Limited Liability Company; and Baker Development Corporation, an Illinois Corporation, | ) ) ) ) | |
| Counterplaintiffs-Appellants; | ) ) | |
| v. | ) ) | |
| Case Foundation Company, a Maryland, Corporation Doing Business in Illinois, | ) ) ) | Honorable Allen S. Goldberg. Judge Presiding. |
| Counterdefendant-Appellee). | ) ) | |

JUSTICE GARCIA delivered the opinion of the court.

Defendants and counterplaintiffs Baker Development Corporation and Lincoln Park West Associates, LLC (LPWA), appeal from an order of the trial court finding the settlement agreement between plaintiff The Pierre Condominium Association and the counterdefendant, Case Foundation Company, to be in good faith and dismissing Baker/LPWA's counterclaim against Case. The

counterclaim and settlement arose out of the plaintiff's suit for property damage allegedly caused during the construction of a high-rise condominium building on an adjacent property.  We affirm.

BACKGROUND

The plaintiff owns a building located at 2100 North Lincoln Park West in Chicago, Illinois (The Pierre).  Baker owns the real property located immediately adjacent to the north side of The Pierre, at 2120 North Lincoln Park West (Adjacent Property).  Baker was also the developer for the construction project on the Adjacent Property.

LPWA is an Illinois limited liability company and owner of the Adjacent Property.  Baker formed LPWA to develop the Adjacent Property.

Baker/LPWA retained McCauley Construction Corporation as the general contractor for the construction of a high-rise condominium building on the Adjacent Property.

McCauley subcontracted with Case to perform excavation services to create an underground foundation for the construction project on the Adjacent Property.  The subcontract between McCauley and Case, in part, provides:

> "4.6.1  To the fullest extent permitted by law, the Subcontractor [Case] shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them

**2**

from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6."

On or about November 12, 1998, during the excavation work on the Adjacent Property, the north end of The Pierre began to subside. The subsidence caused cosmetic damage to the building.

In 2000, the plaintiff filed suit against Baker, LPWA, McCauley, and Case, seeking recovery for property damage to The Pierre allegedly caused by the construction of the high-rise condominium building on the Adjacent Property. The plaintiff's

complaint alleged theories of strict liability, common law negligence, and willful and wanton conduct.

On November 12, 2002, Baker/LPWA filed a counterclaim against Case seeking recovery under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 et seq. (West 2002)) and pursuant to paragraph 4.6.1 of the subcontract between McCauley and Case.

On March 23, 2005, Case filed a motion for partial summary judgment on the counterclaim filed by Baker/LPWA. Case argued that paragraph 4.6.1 of the subcontract required it to indemnify Baker/LPWA for their own negligence in violation of the Construction Contract Indemnification for Negligence Act (Indemnification Act) (740 ILCS 35/1 et seq. (West 2002)) and, thus, was void against public policy. In the alternate, Case argued that if paragraph 4.6.1 of the subcontract required contribution, rather than indemnification, Baker/LPWA's contractual contribution claim was duplicative of their statutory contribution counterclaim and, thus, should be stricken.

Based on the subsidence of The Pierre, the plaintiff claimed damages ranging from $5 million to $6 million. Case estimated the amount of recoverable damages to be about $3.8 million. The plaintiff and Case entered into a settlement agreement with the following relevant terms:

> "a. Defendant, Case Foundation Company, will
> cause to be paid a sum in the amount of $4,967,350.00

**4**

to the plaintiff;

b. Plaintiff will release, acquit and forever discharge Case Foundation Company and its agents, servants, employees, successors and assigns;

c. The plaintiff will covenant not to further prosecute or again sue the aforesaid defendant, Case Foundation Company, its agents, servants, employees, successors and assigns;

d. The plaintiff will indemnify, hold harmless and satisfy any and all outstanding liens, from any source;

e. This agreement is a comprise of a disputed claim and does not constitute an admission of liability on the part of Case Foundation Company which expressly denied any and all such liability; and,

f. This agreement does not constitute a settlement or release of any claims the plaintiff has or may assert against any other parties to this action."

The settlement agreement was contingent upon entry of a court order approving the settlement and a finding that it was entered into in good faith. The settlement was also contingent upon the dismissal of all counterclaims against Case.

On June 7, 2005, Case filed a motion for a good-faith finding pursuant to the settlement it reached with the plaintiff.

On July 22, 2005, after hearing arguments, the trial court granted Case's motion for partial summary judgment on Baker/LPWA's counterclaim finding "the relevant case law supports Case's motion and asserts that contractual contribution is invalid." The trial court also granted Case's motion for a good-faith finding, leading to Case's dismissal from the lawsuit. The court found that "Baker and LPWA *** presented no concrete evidence to challenge the [good] faith of the settlement" and thus, "they have not satisfied their burden of demonstrating that the settlement was made in bad faith." Baker/LPWA filed a timely notice of appeal.

ANALYSIS

I

At the trial court level, Baker/LPWA and Case disputed the effect to be given paragraph 4.6.1 in the subcontract. Baker/LPWA argued the subcontract did not violate the Indemnification Act because the disputed provision provided Case would be liable for damages only to the extent of its own negligence and, thus, the provision must be read as one seeking contribution, not indemnification. Case responded that the provision required it to fully indemnify Baker/LPWA for their negligence if Case were found jointly negligent to any extent and, thus, was void against public policy.

We agree with Baker/LPWA that "[t]he trial court did not explicitly rule on *** whether the subject provision violates the

**6**

Construction Indemnification for Negligence Act, but implicitly determined that it does not by finding the provision is 'actually a contractual contribution clause.' "  That the provision should be read as a contribution clause, rather than one requiring indemnification, is consistent with Illinois case law.

We consider basic tenets of contract law and the purpose of the Indemnification Act in determining the character of a disputed contract provision.  Braye v. Archer-Daniels-Midland Co., 175 Ill. 2d 201, 215, 676 N.E.2d 1295 (1997).  As general principles of contract law, we consider that parties are presumed to contract with the knowledge of existing laws and that interpretation of a contract that renders the agreement enforceable is preferable to an interpretation that renders it void.  Braye, 175 Ill. 2d at 217.

The Indemnification Act was enacted to thwart the common construction industry practice of using indemnity agreements to avoid liability for negligence and to ensure a continuing incentive for individuals responsible for construction activities to protect workers and others from injury.  Braye, 175 Ill. 2d at 216.  Thus, the Indemnification Act renders construction contracts with an indemnification clause as to the contractor's own negligence void against public policy.  740 ILCS 35/1 (West 2002).

It is clear that paragraph 4.6.1 provides that Case is liable to Baker/LPWA for Case's negligence.  However, Case

**7**

contends that the provision may be read to require it to indemnify Baker/LPWA for their own negligence, based on the following language:

> "the Subcontractor [Case] shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, *** but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, <u>regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder</u>." (Emphasis added.)

However, according to Illinois case law, at the time the parties entered into the subcontract, Baker/LPWA were presumed to know that a pure indemnification clause is void as a violation of public policy. See <u>Braye</u>, 175 Ill. 2d at 217. Moreover, "the literal terms of a contract are not necessarily dispositive on the issue of whether it is void under the Construction Contract Indemnification for Negligence Act." <u>Liccardi v. Stolt Terminals, Inc.</u>, 178 Ill. 2d 540, 549-50, 687 N.E.2d 968 (1997). Thus, while the above language may support Case's contention, consistent with the supreme court's suggestion, we read the disputed provision as requiring contribution, not

indemnification.  See Liccardi, 178 Ill. 2d at 549-50.
Accordingly, the anti-indemnity act is not implicated and the
subject provision is not void as against public policy.

II

Next, Baker/LPWA contend the trial court erred when it
disposed of the contribution issue on summary judgment.  Before
the trial court, Baker/LPWA conceded that a proper good-faith
settlement finding would extinguish their statutory contribution
claim under the Contribution Act.  See 740 ILCS 100/2(d) (West
2002).  On appeal, Baker/LPWA do not refute their earlier
concession; rather, they contend the trial court erred in
granting Case summary judgment because their contribution claim
was not based on a statutory right stemming from the Contribution
Act, but on a contractual right.  Case responds that the good-
faith settlement with the plaintiff extinguished any contribution
claim, whether statutory or contractual, that Baker/LPWA may have
had and, thus, summary judgment was proper.

In arguing that Baker/LPWA's cause of action for contractual
contribution was extinguished by the settlement, Case relies on
the decision in Herington v. J.S. Alberici Construction Co., 266
Ill. App. 3d 489, 639 N.E.2d 907 (1994).  In Herington, the court
held that construing a contract provision to create a cause of
action for contractual contribution, independent of the
Contribution Act's dismissal provision based on a good-faith
settlement, would contravene the public policy of Illinois

**9**

favoring settlements.  Herington, 266 Ill. App. 3d at 494.  As the Herington court explained, "Such a result would effectively eliminate settlements by joint tortfeasors under the Contribution Act."  Herington, 266 Ill. App. 3d at 495.  That is, no settlement would be possible because under a contractual contribution claim as asserted by Baker/LPWA, only a finder of fact could determine a tortfeasor's pro rata share of liability.

In the face of this explicit rejection of the position they advocate here, Baker/LPWA contend that the court's statements in Herington about contractual contribution under the Contribution Act are no longer the law of Illinois and, thus, the trial court's reliance on Herington to grant Case's motion for summary judgment was improper.  While recognizing that Herington has not been overruled, they claim that post-Herington developments make clear that parties may contract out of the provisions of the Contribution Act.  Baker/LPWA argue that a subcontractor may relinquish by contract the good-faith settlement dismissal provision of the Contribution Act.  According to Baker/LPWA, a subcontractor may contract for its full liability for all damages it proximately causes, relying on their reading of the decisions of Braye, Liccardi and Willis v. Kiferbaum Construction Corp., 357 Ill. App. 3d 1002, 830 N.E.2d 636 (2005), and their claim that the decision in Herington was "an aberrational ruling."

In both Braye and Liccardi, the issue was whether an employer could enter into a valid and enforceable contractual

**10**

agreement to waive the workers' compensation liability cap on its contribution liability. Braye, 175 Ill. 2d at 202; Liccardi, 178 Ill. 2d at 542-43. Preliminarily, this issue hinged on whether the disputed provision in the construction contract was interpreted as a promise for indemnity or a promise for contribution. Braye, 175 Ill. 2d at 202; Liccardi, 178 Ill. 2d at 542-43. In both cases, our supreme court found that the respective contractual provisions promised contribution, not indemnity. The court then considered whether the contract provisions at issue constituted enforceable provisions for contribution unrestricted by the workers' compensation liability cap recognized by Kotecki v. Cyclops Welding Corp., 146 Ill. 2d 155, 585 N.E.2d 1023 (1991). Braye, 175 Ill. 2d at 210; Liccardi, 178 Ill. 2d at 546. The supreme court ultimately concluded that the provisions at issue were valid as waivers of the workers' compensation liability cap. Braye, 175 Ill. 2d at 213-18; Liccardi, 178 Ill. 2d at 546-50.

Baker/LPWA argue that by failing to invalidate the contractual provisions in Braye and Liccardi, our supreme court implicitly recognized the viability of a claim for contractual contribution as they contend exists here. They argue "that a claim under a contract may be for greater relief than one under the Contribution Act." This freedom of contract position taken by Baker/LPWA fails to recognize that the supreme court grounded its decisions in Braye and Liccardi, regarding "discretionary

**11**

business decisions made by an employer" that may result in a decision to relinquish the protections of the Workers' Compensation Act, on its determination that such decisions do "not violate the terms or policy of the Act." Braye, 175 Ill. 2d at 212.

In Braye and Liccardi, our supreme court interpreted the contractual provisions as evidence of a promise by an employer to contribute according to "its pro rata share of damages proximately caused by its negligence, notwithstanding the employer's ability to avail itself of the Kotecki cap on its liability." Braye, 175 Ill. 2d at 210. "We continue to adhere to [the] view [that an employer may relinquish by contract the liability limitation set forth in Kotecki]." Liccardi, 178 Ill. 2d at 546. The court expressly held "that neither the language of the Workers' Compensation Act nor public policy prohibits our determination that an employer may waive the protection of the Workers' Compensation Act." Braye, 175 Ill. 2d at 210; Liccardi, 178 Ill. 2d at 546. Baker/LPWA, from the recognition that an employer may waive the damages limitation in Kotecki, leap to the conclusion that a contracting party may also waive the good-faith-settlement dismissal provision in the Contribution Act. Without deciding whether the provision at issue here may be read as such a waiver, we reject Baker/LPWA's contention that such relinquishment by contract is not against Illinois public policy favoring settlements.

**12**

While in Braye the issue concerned the right of the parties to contract away any limitation on the damages a negligent party may owe to another for common liability, the supreme court made clear in answering the certified questions that the position of the third party seeking contribution from the employer was "consistent with the Contribution Act." Braye, 175 Ill. 2d at 214. The court also made clear that "the policies of the Contribution Act are not offended by [the third party's] prayer for relief because the goals of achieving comparative fault and encouraging good-faith settlements remain intact." Braye, 175 Ill. 2d at 217.

Here, however, Baker/LPWA seek relief that is at odds with the Contribution Act. The supreme court made clear in Braye and Liccardi that the decision to relinquish the protections of the Workers' Compensation Act did not violate the terms or policy of the Act. Baker/LPWA's contention that parties may contract out of the good-faith-settlement provision tears at the very fabric of the Contribution Act. The position taken by Baker/LPWA would in effect preclude a good-faith settlement based on their contention that the contractual contribution claim trumps the express policy of the Contribution Act encouraging good-faith settlements. See 740 ILCS 100/2(d), (e) (West 2002). We cannot agree. As the court in Herington recognized, to uphold the validity of such a contract provision would "effectively eliminate settlements by joint tortfeasors under the Contribution

**13**

Act." Herington, 266 Ill. App. 3d at 494. We find no support in the supreme court's decisions of Braye and Liccardi to warrant such an expansion of a contractual claim.

As further support for their position, Baker/LPWA rely on our decision in Willis. We, likewise, find no support for Baker/LPWA's position in Willis, where we cited with approval the decision in Herington. See Willis, 357 Ill. App. 3d at 1006, citing Herington, 266 Ill. App. 3d at 494. We read nothing in Willis to suggest that a construction contract may have a valid provision waiving the good-faith-settlement dismissal provision of the Contribution Act.

Our supreme court's decision in BHI Corp. v. Litgen Concrete Cutting & Coring Corp., 214 Ill. 2d 356, 827 N.E.2d 435 (2005), provides further reason to adhere to our decision to follow Herington that certain provisions in a contract, providing for contribtuion, may violate state policy. In Litgen, our supreme court rejected an attempt by settling defendants, found not to have done so in good faith, to proceed against the nonsettling defendants by way of an assignment from the original plaintiffs. "An arrangement by which a settling defendant attempts to obtain indirect contribution from a nonsettling defendant by an assignment of claims violates the Contribution Act. We cannot allow the settling defendants to contract an end run around section 2(e). Accordingly, we hold that the setting defendants may not pursue the assigned claims." (Emphasis Added.) Litgen,

**14**

214 Ill. 2d at 366, 365. The freedom to contract did not prevail over the policy considerations embodied in the Contribution Act in Litgen, nor can it here.

Accordingly, Baker/LPWA's contractual contribution claim is rejected as such a claim would contravene Illinois public policy encouraging settlements. While "an employer may enter into a valid and enforceable contractual agreement to waive the Kotecki limitation on the employer's contribution liability" (Braye, 175 Ill. 2d at 218), a contractual agreement that is at odds with the express policy of the Contribution Act encouraging good-faith settlements is not valid or enforceable. The trial court properly granted partial summary judgment on the contribution issue.

Because we find any claim for contractual contribution without an accompanying dismissal provision based on a good-faith settlement to be invalid as against public policy, we see no need to address whether such a claim is duplicative of a claim under the Contribution Act.

### III

It is the good-faith nature of a settlement that triggers the discharge of the settling tortfeasor's statutory liability for contribution to other tortfeasors. 740 ILCS 100/2(d) (West 2002). Thus, in order to determine whether the dismissal of Case from the lawsuit was proper, we must first determine whether the trial court properly concluded that the settlement between the

**15**

plaintiff and Case was made in good faith.

Under the Contribution Act, whether a settlement has been made in good faith is a matter within the sound discretion of the trial court and one that must be based upon consideration of the totality of the circumstances. Johnson v. United Airlines, 203 Ill. 2d 121, 135, 784 N.E.2d 812 (2003). "The amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability." Johnson, 203 Ill. 2d at 137. In determining whether the settlement was made in good faith, the trial court may also consider whether the settlement was supported by consideration. Wreglesworth v. Arctco, Inc., 317 Ill. App. 3d 628, 633, 740 N.E.2d 444 (2000). Additionally, the trial court may consider: (1) whether the amount paid by the settling tortfeasor was reasonable; (2) whether there was a personal relationship between the settling parties; and (3) whether the settling parties attempted to conceal the terms of the settlement. Wreglesworth, 317 Ill. App. 3d at 634.

The settling party initially bears the burden of proof of showing that the settlement was made in good faith. Johnson, 203 Ill. 2d at 132. The settling party's initial showing of good faith can be satisfied by showing that the settlement is reasonable and fair in light of the two policies underlying the Contribution Act of promoting settlements with a fair apportionment of damages among tortfeasors. Johnson, 203 Ill. 2d

**16**

at 133.

After the settling party has met its burden to show good faith, the burden shifts to the party challenging the settlement to show by a preponderance of the evidence that the settlement was not made in good faith. Johnson, 203 Ill. 2d at 132. A settlement is not made in good faith if there is evidence that the settling parties engaged in "wrongful conduct, collusion, or fraud" or if the settlement "conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." Johnson, 203 Ill. 2d at 134. Upon review, we will overturn the trial court's determination of good faith only where there has been an abuse of discretion. Johnson, 203 Ill. 2d at 135.

A review of the circumstances surrounding the settlement between Case and the plaintiff supports the trial court's finding that their settlement was entered in good faith. Case's motion for a good-faith finding set forth the terms of the settlement, including the valid consideration. The value of the settlement exceeded Case's estimation of the plaintiff's total recoverable damages and represented over 80% of the plaintiff's total demand and therefore, was consistent with the objective of the Contribution Act of fair apportionment of the damages. See Johnson, 203 Ill. 2d at 132. The burden then shifted to Baker/LPWA to show that the settlement was not made in good faith.

However, as the trial court noted, Baker/LPWA failed to

**17**

offer any evidence to show that Case and the plaintiff engaged in "wrongful conduct, collusion, or fraud" nor was the settlement shown to conflict with the terms of the Act or the Act's underlying objectives.  The trial court properly concluded that Baker/LPWA failed to satisfy their burden of proof: "Baker and LPWA fail to show how the settlement was made through wrongful conduct. *** Since Baker and LPWA have presented no concrete evidence to challenge the [good] faith of the settlement, they have not satisfied their burden of demonstrating that the settlement was made in bad faith."  Accordingly, the trial court properly granted Case's motion for a good-faith finding.

IV

Because we have determined the trial court properly found the settlement between the plaintiff and Case to be in good faith, we address the trial court's grant of Case's motion for dismissal from the lawsuit in short order.

That the settlement between the plaintiff and Case was made in good faith requires that Baker/LPWA's statutory counterclaim for contribution against Case be dismissed under the Contribution Act.  740 ILCS 100/2(d) (West 2002).

V

Lastly, Baker/LPWA contend that the trial court's finding that the settlement was entered in good faith, premised on the dismissal of all counterclaims against Case, must be reversed if the contractual contribution against Case survives.  As we affirm

**18**

the trial court's order granting partial summary judgment to Case on the contribution claim, we need not address this issue further.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed._

CAHILL, P.J., and WOLFSON, J., concur.