2016 IL App (3d) 150018

Opinion filed September 2, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| MARY SANDLIN, individually and as Representative of the Estate of WILLIAM L. SANDLIN, deceased, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HARRAH'S ILLINOIS CORPORATION d/b/a HARRAH'S JOLIET HOTEL AND CASINO, LOONEY RICKS KISS ARCHITECTS, INC., HNEDAK BOBO GROUP, INC., and PEPPER CONSTRUCTION COMPANY, | ) ) ) ) ) ) ) | Appeal No. 3-15-0018 Circuit No. 13-L-188 |
| Defendants. | ) ) | |
| (Harrah's Illinois Corporation, Defendant and Counterplaintiff-Appellant; Hnedak Bobo Group, Inc., Defendant and Counterdefendant-Appellee; Looney Ricks Kiss Architects, Inc. and Pepper Construction Company, Defendants and Counterdefendants.) | ) ) ) ) ) ) ) ) ) | The Honorable Theodore J. Jarz, Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Lytton and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1        In the context of a personal injury action arising out of a slip and fall injury at a hotel, one of the codefendants, Harrah's Illinois Corporation (Harrah's), filed a counterclaim against another codefendant, Hnedak Bobo Group, Inc. (HBG), seeking contractual indemnification or contribution (count I) and statutory contribution (count II).[1, 2] After all of the defendants settled with plaintiff and good-faith findings were made, the trial court granted summary judgment for HBG on both counts of the counterclaim. Harrah's appeals the grant of summary judgment but only as to count I (contractual contribution) of the counterclaim. We affirm the trial court's judgment.

¶ 2                                                       FACTS

¶ 3        In 1999, Harrah's started building a hotel in Joliet, Will County, Illinois. The project was completed the following year. HBG served as the primary architect on the project. Of relevance to this appeal, the contract between Harrah's and HBG for the construction project provided, in pertinent part, as follows:

                "5.1 Indemnification. To the fullest extent permitted by law, Architect, on
                behalf of itself and its agents (all of said parties are herein sometimes collectively
                referred to as the 'Indemnitors'), shall fully indemnify, defend, save and hold
                Owner, its partners, all successor owners and/or partners and their agents,
                employees, partners and anyone else acting for or on behalf of any of them (all of

---

[1]Harrah's pleading as to HBG was labeled a cross-claim. Illinois statute, however, suggests that it should be "called" a counterclaim. See 735 ILCS 5/2-608(a) (West 2012).
        [2]At the trial level and to some extent on appeal, the parties dispute whether Harrah's was actually seeking indemnification or contribution from HBG under count I of the counterclaim. Count I was premised upon a claim of breach of contract relating to section 5.1 of the parties' agreement. For simplicity purposes, we will refer to the claim throughout the remainder of this opinion as the claim for contractual contribution.

said parties are herein collectively referred to as the 'Indemnitees') harmless from and against all liability, damage, loss, claims, demands, actions and expenses of any nature whatsoever including, but not limited to reasonable attorney's fees which arise out of or are connected with, or are claimed to arise out of or be connected with: (i) any negligent act, error or omission or any willful misconduct or other fault by any Indemnitor in the performance of any services to be performed hereunder; (ii) any failure to comply with applicable laws, codes, rules, regulations or ordinances; (iii) any breach of any obligations of Indemnitors as set forth in this Agreement."[3]

¶ 4 In July 2004, plaintiff's decedent, William Sandlin, was staying as a guest in the hotel when he slipped and fell on a wet part of the floor outside of his hotel room shower and was injured. Plaintiff, William's wife, Mary Sandlin (both individually and as the representative of William's estate), brought suit against Harrah's, HBG, and two other parties who were involved in the construction project, alleging various theories of liability. Most or all of the defendants filed counterclaims against each other. One counterclaim was filed by Harrah's against HBG. In that counterclaim, which was later amended, Harrah's sought contractual contribution pursuant to section 5.1 of the parties' agreement (count I) and statutory contribution pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 2012)) (count II).[4]

¶ 5 During the course of the trial-court proceedings, all of the defendants eventually settled with the plaintiff, good-faith findings were made as to each of the settlements, and plaintiff's

---

[3]On Harrah's side, the contract was actually executed by Des Plaines Development Limited Partnership (Des Plaines). Harrah's was the sole general partner of Des Plaines and had the power and authority to perform all acts that the partnership was authorized to perform.

[4]We make no further distinction here between the original counterclaim and the amended counterclaim and, from this point forward, will merely refer to Harrah's active pleading as the counterclaim.

complaint was dismissed with prejudice. All of the counterclaims were also dismissed with prejudice, except for one—Harrah's counterclaim against HBG for contractual contribution and for statutory contribution. Based upon the good-faith settlements of all of the parties, HBG moved for summary judgment on Harrah's counterclaim.

¶ 6 A hearing was held on the motion for summary judgment in August 2014. By the time of the hearing, the parties had fully briefed the matters before the trial court. After listening to the arguments of the attorneys, the trial court granted summary judgment for HBG on Harrah's counterclaim. Following the denial of its motion to reconsider, Harrah's appealed the grant of summary judgment but only as to count I (contractual contribution) of its counterclaim.

¶ 7                                    ANALYSIS

¶ 8 On appeal, Harrah's argues that the trial court erred in granting summary judgment for HBG on Harrah's counterclaim for contractual contribution. Harrah's asserts that summary judgment should not have been granted for HBG because the defense-cost obligation contained in the indemnification clause of the parties' contract was valid and because Harrah's had a constitutional right to the enforcement of that obligation. Harrah's asserts further that the trial court's ruling to the contrary directly conflicts with Harrah's constitutional right to freedom of contract. According to Harrah's, if the Illinois legislature had intended to extinguish contract claims for defense-cost reimbursement with respect to settlements reached under the Contribution Act, the legislature would have specifically done so. Instead, Harrah's posits, the Contribution Act is silent on the matter and does not in any way restrict the right of parties to freely contract for the allocation of defense costs. For all of the reasons stated, Harrah's asks that we reverse the trial court's grant of summary judgment for HBG on Harrah's claim for contractual contribution and that we remand this case for further proceedings.

4

¶ 9        HBG argues that the trial court's grant of summary judgment was proper and should be upheld. HBG asserts that the grant of summary judgment in its favor was appropriate for two reasons: (1) because Harrah's made no effort to separate out those defense costs that it incurred as a result of its own conduct from those defense costs that it incurred as a result of HBG's conduct and (2) because section 5.1 of the parties' contract required contribution, not indemnification, regardless of the label placed upon that provision, and the right to contribution was extinguished, pursuant to the Contribution Act, based upon both HBG's and Harrah's good-faith settlements with the plaintiff. HBG asserts further that the trial court's ruling in this case was consistent with the case law in this area and did not abridge Harrah's right to freedom of contract. In addition, as to Harrah's assertion regarding statutory interpretation, HBG contends that it is actually Harrah's assertion, and not HBG's, that is contrary to the plain language of the Contribution Act. For all of the reasons set forth, HBG asks that we affirm the trial court's grant of summary judgment in its favor on Harrah's counterclaim for contractual contribution.

¶ 10        The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings and supporting documents, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free

from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* In addition, matters of statutory construction and contract interpretation, which are also involved in this case, are subject to a *de novo* standard of review on appeal as well. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50 (statutory construction); *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007) (contract interpretation).

¶ 11    The question before this court in this appeal is whether the indemnification provision (section 5.1) in the construction contract between the parties allows Harrah's to recover its defense costs from HBG, despite the fact that both Harrah's and HBG entered into good-faith settlements with the plaintiff. A very similar issue was presented to the Appellate Court, First District, in the case of *Pierre Condominium Ass'n v. Lincoln Park West Associates, LLC.*, 378 Ill. App. 3d 770 (2007). The plaintiff in that case owned a condominium building, which was damaged by construction work that was being done on the adjacent property. *Pierre Condominium*, 378 Ill. App. 3d at 771-72. The plaintiff sued the owner of the adjacent property, the general contractor, and the excavation subcontractor, alleging various theories of liability. *Id.* at 772. The adjacent property owner filed a counterclaim against the excavation subcontractor seeking both statutory contribution and contractual indemnification. *Id.* The contractual-indemnification claim was based upon an indemnification clause contained in the construction contract between the general contractor and the excavation subcontractor. *Id.* The excavation subcontractor filed a motion for partial summary judgment on the counterclaim, arguing that the contractual-indemnification provision required it to indemnify the adjacent property owner for the adjacent property owner's own negligence in violation of the Construction Contract Indemnification for Negligence Act (Indemnification Act) (740 ILCS 35/1 *et seq*. (West 2002)) and was, therefore, void as against public policy. *Pierre Condominium*, 378 Ill. App. 3d at 772-

73. In the alternative, the excavation subcontractor argued that if the contractual provision actually required contribution, rather than indemnification, that count of the counterclaim was duplicative of the statutory contribution count and should be stricken. *Id.* at 773. The excavation subcontractor eventually entered into a settlement agreement with the plaintiff and filed a motion for a good-faith finding as to the settlement. *Id.* After a hearing on the motions, the trial court granted the excavation subcontractor's requests for partial summary judgment on the counterclaim and for a good-faith finding as to the settlement. *Id.* The adjacent property owner appealed. *Id.*

¶ 12    On appeal in the *Pierre Condominium* case, the appellate court found that the contract provision in question was a contribution clause, rather than an indemnification clause, because an indemnification clause of that nature in a construction contract would have been void pursuant to the Indemnification Act, the parties were presumed to have entered into the contract with knowledge of the existing laws, neither the label placed on the contract provision nor its literal terms were dispositive, and an interpretation of the contract that rendered the contract enforceable was preferable to one that rendered the contract void. *Id.* at 774-75.

¶ 13    Having determined that the clause in question required contribution, rather than indemnification, the appellate court in *Pierre Condominium* turned to the issue of whether the contract-contribution claim was extinguished by the good-faith settlement. *Id.* at 775. Similar to Harrah's in the instant case, the adjacent-property owner in the *Pierre Condominium* case argued that the contract-contribution claim was valid based upon the right to freedom of contract. *Id.* at 775-76. The appellate court rejected that argument and held that the contract-contribution claim was at odds with the Contribution Act and that it violated the public policy that encouraged settlements. *Id.* at 776-78. The appellate court noted that the adjacent property owner's

contention—that the parties could contract out of the Contribution Act's good-faith settlement provision—tore "at the very fabric of the Contribution Act." *Id.* at 777. The appellate court noted further that the position taken by the adjacent-property owner would in effect preclude and eliminate good-faith settlements by joint tortfeasors under the Contribution Act. *Id.* The appellate court concluded, therefore, that the adjacent-property owner's right to freedom of contract in that case did not prevail over the policy considerations embodied in the Contribution Act. *Id.* at 778.

¶ 14 For the reasons stated in the *Pierre Condominium* case, we reach the same conclusion here. See *id.* at 774-78. As the appellate court found in *Pierre Condominium*, in the present case, despite the label placed upon the provision and its references to indemnification, section 5.1 of the parties' contract must be viewed as a contribution clause, rather than an indemnification clause. See *id.* at 774-75; see also *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 213-18 (1997) (the supreme court found, although somewhat implicitly, that the provision that was at issue in the construction contract involved was a contribution provision and not an indemnification provision); *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 548-50 (1997) (same); *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489, 493-95 (1994) (the appellate court held that an indemnification agreement contained in a construction contract was in truth an agreement to make contribution, since "partial indemnity" did not exist, regardless of how the provision was labeled or the technical terms it contained). As a matter of contract interpretation, we must presume that the contracting parties before us knew the law at the time that they entered into the contract—that a full indemnification clause in a construction contract would violate the Indemnification Act, that such a provision would not be enforceable, and that partial indemnity did not exist. See *Pierre Condominium*, 378 Ill. App. 3d at 774-75; *Herington*, 266 Ill. App. 3d at 493-95.

¶ 15    We also conclude, as the appellate court did in *Pierre Condominium*, that to the extent that section 5.1 of the construction contract in the present case provides a contractual right to contribution that is independent of the Contribution Act, that provision is at odds with the Contribution Act and violates the public policy that encourages settlement. See *Pierre Condominium*, 378 Ill. App. 3d at 776-78; see also *Herington*, 266 Ill. App. 3d at 494-95. As with the adjacent property owner in *Pierre Condominium*, Harrah's right to freedom of contact in the instant case does not prevail over the policy considerations embodied in the Contribution Act. See *Pierre Condominium*, 378 Ill. App. 3d at 778; see also *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 366 (2005) (the supreme court held that assignments of claims that were given to the settling defendants as part of their settlement agreements with the plaintiffs could not be used by the settling defendants to recover indirect contribution from the nonsettling defendant in a contractual "end run" around the Contribution Act). We, therefore, reject Harrah's freedom-of-contract argument on this issue.

¶ 16    In reaching that conclusion, we note that our ruling here is consistent with and supported by a plain reading of sections 2(d) and 2(e) of the Contribution Act, which provide that a tortfeasor who enters into a good-faith settlement with a claimant is discharged from all liability for any contribution to any other tortfeasor and may not recover contribution from another tortfeasor whose liability is not extinguished by the settlement. See 740 ILCS 100/2(c)-(e) (West 2012). Contrary to Harrah's contentions on appeal, by holding as we do in the present case, we are not running afoul of the plain language of the Contribution Act and creating a limitation that the legislature did not express. See *id.* Rather, our holding here adheres to the plain language of the Contribution Act that is specifically cited above and bolsters the policies embodied in the Act. See *id.*; *BHI Corp.*, 214 Ill. 2d at 366.

¶ 17   For all of the reasons stated above, we affirm the trial court's order, granting summary judgment for HBG on count I of Harrah's counterclaim (contractual contribution). Having done so, we need not address the other assertion made by HBG in support of its argument on appeal— that summary judgment was appropriately granted in its favor because Harrah's failed to separate out the defense costs that were attributable to its own conduct from the defense costs that were attributable to HBG's conduct.

¶ 18                                    CONCLUSION

¶ 19   For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 20   Affirmed.