**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240564-U

Order filed October 3, 2025

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| BOARD OF DIRECTORS OF THE LAKELANDS ESTATE HOMEOWNER'S ASSOCIATION, CORP., | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee/Cross Appellant, | ) ) | Appeal No. 3-24-0564 Circuit No. 22-CH-70 |
| v. | ) ) | |
| SHITALDAS J. PAMNANI, | ) ) | Honorable John C. Anderson, |
| Defendant-Appellant/Cross Appellee. | ) | Judge, Presiding. |

---

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Bertani concurred in the judgment.

---

**ORDER**

¶ 1     *Held*:   The award of punitive damages was not excessive and/or unconstitutional. Defendant failed to establish that plaintiff was not entitled to summary judgment in its favor. The court did not err by failing to award a higher amount of punitive damages and/or Rule 137 sanctions as requested by plaintiff.

¶ 2     Defendant, Shitaldas J. Pamnani, appeals the Will County circuit court's orders granting summary judgment in favor of Plaintiff, Board of Directors of the Lakelands Estate Homeowner's Association, Corp. (Board), denying summary judgment in favor of Pamnani and

awarding damages to the Board. Pamnani argues the court's award of punitive damages is excessive and unconstitutional. He also argues that judgment in favor of the Board was improper. The Board cross-appeals, arguing that the court's award of punitive damages and/or Rule 137 sanctions was insufficient. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The Board filed a complaint, and later an amended complaint, against Pamnani. The complaint alleged breach of fiduciary duty related to Pamnani holding himself out as the acting president of the Board and obtaining control over the Lakelands Estate Homeowner's Association, Corp.'s (Association) funds. Pamnani filed a verified answer in which he admitted that he sent a letter on the Association's stationary to the Association members stating that he froze the Association's bank account and that the Association would be unable to pay any bills. Pamnani filed a verified counterclaim against Board members Kathy Ruzicka and Jeff Rick alleging breach of fiduciary duty and breach of the declaration and bylaws. Rick filed a motion to dismiss Pamnani's claims. Following a hearing, the court granted the motion to dismiss without prejudice and allowed leave to replead. Pamnani ultimately replead the claims; however, the claims were again dismissed.[1]

¶ 5        During the course of litigation, Pamnani, through his then-attorney, made a settlement offer to the Board. Pamnani's attorney subsequently withdrew as counsel and Pamnani proceeded as a self-represented litigant. The Board attempted to hold a meeting to consider the settlement offer, but Pamnani, as a self-represented litigant, sought court intervention to prevent the meeting. The court found the settlement offer to be vague and ambiguous. The court also

---

[1]It appears Ruzicka was never served with the counterclaim.

ordered that the Board meeting was not to be held. At one point during the litigation, the court ordered Pamnani to utilize the caption provided by the Board's counsel, as Pamnani's filings had not been utilizing the correct caption, which caused issues in having the documents properly filed. Additionally, during a hearing wherein the parties were discussing the discovery that needed to be completed, Pamnani indicated that he needed to take at least four or five depositions. The court told Pamnani that the Board was seeking attorney fees and that the court felt that by the time the case was over, "there will be enough fees involved in this case that you could have bought a Porsche instead."

¶ 6        The Board filed a motion for summary judgment. It sought summary judgment on the issues of liability; punitive damages, including attorney fees; and Pamnani's removal from the Board, along with prohibiting Pamnani from running for office for three years. The Board requested that the damages amount be proved up at a later hearing. The Board also filed a statement of material facts, along with the exhibits supporting the facts. Pamnani filed a response and "Request for Summary Judgment." The response argued that "Pamnani was forced to freeze the association funds." Pamnani also filed a letter indicating that he was providing a courtesy copy of his response to the motion for summary judgment and requesting summary judgment against Rick and Ruzicka. Pamnani sought various types of affirmative relief in his favor, including an order for an open election conducted by the sheriff and an order preventing any current Board members from conducting any Board business. However, it does not appear that there were any pending pleadings against Rick and Ruzicka at that time. The Board filed a reply, noting that Pamnani was not forced to do anything, including freezing the Association's funds, and had other options. Additionally, the Board argued that Pamnani failed to comply with a local rule which required him to respond to each paragraph of the Board's statement of material facts.

3

¶ 7 The court held a hearing on the motion and issued an order after taking the matter under advisement. The court found that Pamnani failed to comply with the local rule requiring him to respond to the Board's statement of material facts to indicate whether such facts were disputed or not. The court noted that the failure to respond to crucial factual allegations in a statement of uncontested facts deems those facts admitted. The court found that regardless of the noncompliance, the evidence justified summary judgment. The court found that Pamnani, as a Board member and officer, owed the Association a fiduciary duty and that he breached that duty by: (1) "unilaterally sequestering all of the Association's funds for the stated and intended purpose of preventing the Association from being able to pay its bills over a purported $60 dispute;" and (2) "attempting to unilaterally hold unauthorized elections." The court further found that punitive damages were warranted because Pamnani intended to inflict harm on the Association by freezing its bank account, such that it could not pay its bills. The court found that this conduct was willful and malicious. Although Pamnani claimed that he was forced to freeze the funds, the court noted he had other options. The court granted summary judgment in favor of the Board and denied Pamnani's request for summary judgment. The Board was given leave to file a fee petition and additional affidavits to prove up its damages.

¶ 8 The Board filed a motion for entry of judgment, a petition for award of damages, and a petition for Rule 137 sanctions. The Board sought compensatory damages in the amount of $414.13, consisting of costs for postage, reimbursement of fees for dishonored checks, and the cost of new checks. The Board also sought $217,664.04 in punitive damages, which was the amount of legal fees and costs incurred by the Board as a result of the instant litigation. The petition for Rule 137 sanctions requested sanctions in the amount of $205,796.51 for attorney fees incurred subsequent to Pamnani filing his answer. The petition argued that Pamnani's

4

answer denied liability without a basis and also that Pamnani litigated in bad faith. The petition detailed various actions by Pamnani that the Board argued evidenced his bad faith. Pamnani filed responses. He argued that the amount requested for punitive damages was excessive and there was no direct financial harm to the Association members. Pamnani further argued that it was the Board's counsel that delayed matters and made numerous filings. Pamnani also argued that Ruzicka called him a name before her deposition and that the Board's counsel showed him his tongue during a deposition, although he provided no evidence to support these allegations. He further argued that Rule 137 sanctions focus on filings and not other forms of bad faith. Additionally, Pamnani argued that any sanctions should be proportional to the sanctionable conduct.

¶ 9        At a hearing on the motion and petitions, the Board clarified that it was seeking the amount of attorney fees incurred as punitive damages or, alternatively, not cumulatively, as Rule 137 sanctions. The Board sought a total damage award of $250,824.17, which included the compensatory damages of $414.13 and attorney fees incurred since the petitions had been filed. The court noted that it did not believe any of the attorney fees were excessive or improper but stated there was a disconnect between the amount of money at stake and the fees. The Board responded that it had no option but to file the lawsuit to stop Pamnani's actions or it would have faced liability from the Association members for failing to protect the Association's assets. Essentially, the Board noted the case was about much more than the compensatory damages, as Pamnani was trying to unlawfully create a counter board and there was no way to stop Pamnani or get through to him without the lawsuit. After hearing the Board's response, the court analogized the matter to having to drag a passenger off a plane when he refused to move from the wrong seat, as there was no other option. The court took the matter under advisement.

¶ 10      The court entered judgment in favor of the Board, which awarded equitable relief, compensatory damages, punitive damages, and Rule 137 sanctions against Pamnani. The court set forth in detail the background facts of the case. It noted that Pamnani unilaterally froze the Board's bank account and attempted to assume control over the funds by closing the account. Pamnani informed the bank that he believed funds were being misused based upon a $60 check that was issued to cover the costs of reserving a room to hold a previously scheduled meeting, which Pamnani attempted to unilaterally cancel. The court also noted that during the pendency of this matter, Pamnani sent an unauthorized communication to the Association members, setting a date for an election to fill Board positions (which had already been filled) and stating that HOA fees would be waived. The court further found that the litigation proceeded through discovery which, at Pamnani's insistence, included oral discovery. The court stated that it had reviewed the Board's "fee petition and invoices and found the amount charged and the tasks performed to be reasonable."

¶ 11      The court found that compensatory damages in the amount of $414.13 were appropriate based upon the affidavit of the Board's treasurer. Turning to the request for equitable relief, the court noted its previous finding that Pamnani's "actions of unilaterally sequestering all of the Association's funds for the stated and intended purpose of preventing the Association from being able to pay its bills over a purported $60 dispute *** breached [his fiduciary] duty. His actions in attempting to unilaterally hold unauthorized elections also breached that duty." Based on those findings, the court stated that Pamnani put his personal interests above the Association's interests and found it appropriate to remove Pamnani from the Board and bar him from running for office on the Board or the Master Association Board for three years. As to the $43,000 in funds that

6

Pamnani seized control of, the court dissolved its previously entered injunction safeguarding those funds and allowed the funds to be returned to the Board.

¶ 12    The court also awarded $43,000 in punitive damages. The court found that after Pamnani "learned that he would not be appointed President, he turned on his neighbors and friends, to whom he owed a fiduciary duty, by seizing control of all the Association's funds, over $43,000, to be held hostage at his whim. This willfull and malicious act initiated this lawsuit and a petition for temporary restraining order." The court also noted that Pamnani attempted to hold unauthorized elections, which led to a motion for preliminary injunction and an amended complaint in this matter. The court found that nothing had deterred Pamnani and there was a strong need for deterrence and punishment. The court found that Pamnani's conduct was highly reprehensible and that he intentionally and repeatedly breached his fiduciary duties. It further found that Pamnani specifically acted to make the Board financially vulnerable by seizing the Association's funds. Pamnani had stated at a meeting that "those who have the money have the power." The court also found that Pamnani's "conduct necessitated litigation, unless the Board was willing to roll over and let [him] have his way."

¶ 13    The court also found Rule 137 sanctions appropriate and awarded $4,300 in attorney fees as sanctions against Pamnani. The court found that in his answer, Pamnani admitted to owing a fiduciary duty and to freezing the Association's bank account, such that the Association would be unable to pay any bills. However, Pamnani denied he breached a fiduciary duty. Following his denial, two years of litigation ensued. The court found that although Pamnani's counsel had sent a settlement offer to the Board, after Pamnani's counsel withdrew, Pamnani successfully moved to enjoin the Board meeting called to consider Pamnani's settlement offer. The court noted that it had previously made Pamnani aware that the Board would be seeking its fees and that the fees

7

incurred would be substantial. The court also found that during the depositions that Pamnani insisted on taking, Pamnani repeatedly demeaned and belittled the witnesses. The court found that Pamnani "never presented any argument that supported his denial of liability under facts he admitted. [Pamnani's] defense as to why his sequestration of all the Association's fund was, 'I was forced to do it.' " The court then noted that Rule 137 sanctions could be imposed where a defendant's answer denied liability without basis and cited various cases imposing such sanctions. The court stated that "[t]o any extent the Court needs to find subjective bad faith on [Pamnani's] part, in addition to baselessly denying liability, [Pamnani's] subjective bad faith is readily evidenced." The court noted various conduct by Pamnani evidencing his bad faith, including seeking to enjoin the Board from meeting to consider his own settlement demand, his refusal to follow court orders, his filing of an amended counterclaim that was factually indistinct from a previously dismissed counterclaim, and only proffering an "I was forced to do it" defense. The court stated that it found ample basis to sanction Pamnani. The court then stated that $4,300 was sufficient punishment for Pamnani's misconduct which was "a relatively nominal amount compared to what the Court might have considered but for the punitive damages award. To the extent the Board sought more, the Court finds there is a disconnect between the amount of fees sought relative to the complexity of the case and the overall outcome of the case." Pamnani appealed and the Board cross-appealed.

¶ 14                                         II. ANALYSIS

¶ 15         Pamnani seems to argue that summary judgment in favor of the Board was improper, as he requests that this court order the trial court to reconsider the judgment against him. However, his argument is unclear and undeveloped. Although he cites some case law, it is not clear how it relates to this matter or supports his argument. As such, we consider this argument forfeited, and

we decline to address the issue on the merits. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error."). Even if we were to attempt to consider this argument on the merits, we note that summary judgment is proper "where the pleadings and supporting documents, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law." *Sandlin v. Harrah's Illinois Corp.*, 2016 IL App (3d) 150018, ¶ 10. Here, Pamnani fails to make any argument that there were genuine issues of material fact that precluded summary judgment or cite to any authority indicating the Board was not entitled to judgment as a matter of law based upon the facts.

¶ 16    Additionally, Pamnani argues that the punitive damages are unconstitutionally excessive due to the fact that the punitive damages of $43,000 were more than 100 times higher than the compensatory damages of $414.13. Defendant notes the guideposts for assessing the constitutionality of punitive damages as "(1) the degree of reprehensibility of the conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and the amount of punitive damages awarded; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases." *Blount v. Stroud*, 395 Ill. App. 3d 8, 24 (2009). However, he fails to provide any argument as to how those guideposts apply to the punitive damages awarded in this case, other than to simply argue the ratio of compensatory

9

damages to punitive damages itself shows that the damages are unconstitutionally excessive. Notably, while "the degree of reprehensibility of the defendant's conduct, is the most important" factor (*id.*), the Supreme Court has refused to impose a bright-line ratio that cannot be exceeded. *International Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 484 (2006). Thus, it would appear that the ratio of compensatory damages to punitive damages alone does not establish that the punitive damages are unconstitutional. Further, we note that compensatory damages were not the only relief provided, as the court also awarded equitable relief in the form of prohibiting Pamnani from serving on the Board for a period of time. Notably, the court awarded $43,000 in punitive damages which is the amount of money that was in the Board's bank account that Pamnani unilaterally took control over and deprived the Board of access. Additionally, the court is allowed to consider the attorney fees incurred in assessing the damages caused by a defendant's conduct, and in this matter those fees exceeded $200,000. See *Blount*, 395 Ill. App. 3d at 27 ("In Illinois, our supreme court has recognized that the amount of attorney fees expended in a case may be taken into account when assessing the propriety of a punitive damage award."). Moreover, the court found that Pamnani's conduct was intended to inflict harm on the Association and that his conduct was willful and malicious. Thus, while at first blush the punitive damages may appear excessive based solely on the ratio between the punitive damages and compensatory damages, when taking into consideration the totality of the relief awarded, the willfulness of Pamnani's conduct, and the total harm caused, including attorney fees, the punitive damages are not unconstitutionally excessive.

¶ 17     The Board argues that the court erred by failing to award sufficient punitive damages and/or Rule 137 sanctions. The Board argues that it should be awarded the totality of the attorney

10

fees it sought, in the amount of $423,460.55.[2] Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018) provides that pleadings, motions, or other documents must be signed by a party or attorney and that the signature "constitutes a certificate by him that *** to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Additionally, Rule 137 provides that if a document is signed in violation of the rule, the court may impose a sanction, including "an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing *** including a reasonable attorney fee." *Id.* "If the rule is violated, the court may, upon motion or its own initiative, impose sanctions upon the individual who signed the filing, the represented party, or both." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 13. The court is not required to sanction a party who violates Rule 137. *Id.* ¶ 15. The circuit court's decision on a Rule 137 motion for sanctions is reviewed for an abuse of discretion. An abuse of discretion occurs when no reasonable person would agree with the decision. *Id.* ¶ 16.

¶ 18          Here, although the court found that Pamnani's conduct was sanctionable under Rule 137, it did not award the Board the entirety of the attorney fees sought and instead awarded $4,300. In doing so, the court noted the amount was lower than what it might have otherwise considered because it had awarded the Board $43,000 in punitive damages. Additionally, the court explained that there was a disconnect between the amount of fees sought (over $250,000) relative to the complexity of the case and the overall outcome. In light of the court's stated reasoning and the

---

[2]We note that this is an incorrect representation of the amount of fees sought by the Board in the trial court. The Board made clear that it was essentially seeking its fees alternatively as punitive damages or Rule 137 sanctions and represented at the hearing on its petitions that the then-current amount of fees was approximately $250,000.

11

fact that a court is not required to impose any sanction on a party for violating Rule 137, we cannot say that the court's decision to award $4,300 in sanctions, instead of the approximately $250,000 sought, was an abuse of discretion. Additionally, the Board argues that the court should have awarded a higher amount of punitive damages. However, as the punitive damage award was significant compared to the minimal amount of compensatory damages, we conclude that the court did not err in its award of punitive damages.[3]

¶ 19                                    III. CONCLUSION

¶ 20        The judgment of the circuit court of Will County is affirmed.

¶ 21        Affirmed.

---

[3]We acknowledge the Board's argument that Pamnani's action of freezing the Association's account caused the Board's inability to pay its insurance premium on time, which, as a result, was cancelled. The Board argues that had the policy not been cancelled, its attorney fees would have been covered by its insurance carrier. However, there was no evidence provided in the trial court that, had the policy been in effect, it would have covered the Board's attorney fees.